(November 29, 1990)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HANNAH ACQUAAH, Appellant.—Judgment, Supreme Court, New York County (James J. Leff, J., at suppression hearing, plea and sentence), rendered November 12, 1987, convicting defendant of murder in the second degree and sentencing her to an indeterminate term of imprisonment of from 15 years to life, unanimously affirmed.

On March 25, 1986, at approximately 4:00 P.M., Martin Acquaah reported his nine-year-old daughter Bertha missing. The police questioned Mr. Acquaah and defendant, Bertha's stepmother, at their apartment at 5 Broadway Terrace concerning Bertha's possible whereabouts. Since, as the officers later learned, there was some "friction" between Bertha and her stepmother, Bertha lived apart from her family, with Stella Clark and Clark's nine-year-old granddaughter, Lakita, in the basement apartment of the same building. Although defendant maintained that she had not seen Bertha during the previous two weeks, Lakita told the police that as she was walking to school with Bertha that morning, the defendant had approached and spoken to Bertha, after which Bertha told Lakita that she was returning home to change her shoes.

At approximately 11:00 P.M. that evening, a police officer requested that defendant accompany him to the precinct in order to further investigate the whereabouts of Bertha. Testimony indicates that the request was "routine", that no weapon was displayed, and that defendant was free to decline. Defendant acquiesced, and rode alongside this plainclothes officer in an unmarked car to the precinct, where she was

placed, unrestrained, in an interview room, offered coffee, and given a glass of water. During the night, defendant was questioned intermittently by detectives and fed between interviews. She was permitted to sleep. Defendant was cooperative, and gave an exculpatory account of her actions.

The next morning, the police verified that Bertha had not been to school the previous day. At approximately 10:00 A.M., the body of a child, soon identified as Bertha, was discovered in Fort Tryon Park. Further investigation revealed that a fellow employee of defendant had assisted defendant in carrying a heavy plastic bag down a stairway into Fort Tryon Park. Confronted with this information, at approximately 11:00 A.M., the police arrested defendant and administered *Miranda* warnings. Defendant willingly answered further questions, maintaining her innocence.

In the late afternoon, after speaking privately with her husband, defendant implicated a priest from Ghana in Bertha's murder. The priest, Prah, allegedly promised to solve her marital problems for a fee. On the morning of March 25, 1986, defendant met Bertha on her way to school and lured her back to the apartment, where Prah forced Bertha to disrobe, then beat her over the head with a wooden statute. The child's limp body was stuffed into a lit oven, until the stench of burning flesh became unbearable. They removed Bertha's body from the oven and wrapped it in several plastic bags. Defendant got Prah a cab and paid him $500. On Prah's instructions, defendant disposed of Bertha's body in Fort Tryon Park, aided, unwittingly, by a coemployee who happened by.

Between 9:00 P.M. and 11:00 P.M., defendant gave yet a further written statement in which she admitted that she herself killed Bertha, in the manner previously described. Although she initially agreed to speak to an Assistant District Attorney, defendant inexplicably changed her mind.

Following a *Huntley* hearing, at which defendant presented no evidence, the court denied defendant's motion to suppress her statements, finding that her initial presence at the precinct was not custodial, and that the statements made following the reading of *Miranda* warnings were voluntary. On this appeal, defendant contends that her statements should have been suppressed on three grounds: (1) her statements were the product of an illegal custodial interrogation; (2) her statements were involuntary; and (3) the police violated her *Miranda* rights since they questioned defendant despite her wishes to remain silent.

None of defendant's contentions withstands scrutiny. The police only knew that Bertha was missing prior to the discovery of her body, and since defendant, Bertha's stepmother, would be expected to voluntarily aid in the police investigation, it is inconceivable that defendant could have reasonably believed she was in police custody until she was actually arrested (*People v Yukl,* 25 NY2d 585, *mot to amend remittitur denied* 26 NY2d 845, 883, *cert denied* 400 US 851). Furthermore, defendant was neither deprived of food, sleep, nor outside contacts; no articulable circumstance indicates that her statements to the police were involuntary (CPL 60.45; *compare, People v Anderson,* 42 NY2d 35). Nor can defendant's occasional silence during questioning be construed as an invocation of her right to remain silent (*United States v Ford,* 563 F2d 1366, 1367 [9th Cir 1977], *cert denied* 434 US 1021 [1978]).

In addition, we find no merit in defendant's contention that the court erred in precluding her from calling her husband as a defense witness at the *Huntley* hearing. A defendant's right to call a witness at a suppression hearing is not absolute (*People v Chipp,* 75 NY2d 327). The suppression court did not err in holding that Martin Acquaah's testimony would be unnecessarily cumulative. Concur—Murphy, P. J., Sullivan, Carro and Milonas, JJ.