■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY L. ROSE, Also Known as ANTHONY L. COUSINS, Appellant. [626 NYS2d 883] —Mercure, J. Appeal from a judgment of the County Court of Sullivan County (Kane, J.), rendered July 30, 1992, upon a verdict convicting defendant of the crimes of manslaughter in the first degree, murder in the second degree, burglary in the first degree (three counts) and criminal possession of a weapon in the second degree.

It is undisputed that defendant was involved in the October 18, 1990 shooting death of Craig Murry at the victim's apartment in the Town of Fallsburg, Sullivan County. It is defendant's position, however, as he testified at trial, that the shooting was an accident. According to defendant, he went to Murry's apartment to purchase marihuana. Although Murry admitted defendant into the premises and initially seemed agreeable, he thereafter became suspicious and directed defendant to leave. As defendant began backing out through the entrance door, Murry attempted to slam the door on him, striking his foot. Murry then attempted to punch defendant, who grabbed Murry in response, and a fight ensued. While the two were grappling with one another, Murry reached into his shirt and pulled out a gun. The two then struggled for possession of the gun (later determined to be a .25-caliber pistol), in the course of which it discharged several times, striking Murry four times. One shot passed through Murry's abdominal region, causing his death.

Defendant was indicted for the following counts: (1) murder in the second degree (Penal Law § 125.25 [1] [intentional murder]), (2) felony murder (Penal Law § 125.25 [3] [committed in furtherance of or immediate flight from the crime of burglary or attempted burglary]), (3) burglary in the first degree (Penal Law § 140.30 [1] [entered or remained unlawfully in a dwelling with intent to commit a crime and armed with a deadly weapon]), (4) burglary in the first degree (Penal Law § 140.30 [2] [entered or remained unlawfully in a dwelling with intent to commit a crime and caused physical injury]), (5) burglary in the first degree (Penal Law § 140.30 [4] [entered or remained unlawfully in a dwelling with intent to commit a crime and displayed a pistol]), and (6) criminal possession of a weapon in the second degree (Penal Law § 265.03 [possession of a loaded .25-caliber pistol with intent to use it against Murry]). Following a jury trial, defendant was convicted of

counts two through six. On the first count, he was convicted of the lesser included offense of manslaughter in the first degree (Penal Law § 125.20 [1] [with intent to cause serious physical injury to Murry, caused his death]). He now appeals.

Initially, we reject defendant's assertion that the evidence was not legally sufficient to support the jury's findings of guilt and that the jury's verdict was against the weight of the evidence. Underlying these related contentions is the erroneous assumption that, because defendant offered the only direct evidence concerning the events that took place in Murry's apartment, the jury was required to credit every part of his testimony in that regard. Fundamentally, a jury need not accept testimony offered by a party simply because the opposing party offered no contrary evidence (see, Brennan v Bauman & Sons Buses, 107 AD2d 654, 655; PJI 1:8, at 26-27 [1995 Supp]). To the contrary, the jury was free to reject all of defendant's testimony or to selectively credit any part that they deemed worthy of belief and reject the rest (see, People v Webster, 139 NY 73, 78-79; Tumulty v New York, New Haven & Hartford R. R. Co., 224 App Div 131, 134-135; 1 CJI[NY] 3.28, at 114-115).

Thus, it may well be that the jury accepted defendant's admission that he was present at Murry's apartment and responsible for delivery of the fatal discharge but rejected his self-serving and improbable account of the tussle that caused Murry to be shot four times. Notably, prosecution witnesses offered evidence that defendant had purchased both .44 and .25-caliber bullets approximately one week prior to the shooting and that he had been seen in the vicinity of Murry's apartment with a gun approximately two weeks prior to the shooting. At that time, defendant made an inquiry as to who was selling "pot" and stated that "[h]e wanted to get [that] guy".

Further, the forensic pathologist who performed the autopsy on Murry testified that, although one of the shots inflicted in the incident came from the front, two came from the side and one actually passed from back to front. It was his opinion that the shot that came from the rear was not consistent with defendant's story of a struggle and, in fact, that only two of the shots were made at close range. This evidence, together with defendant's acknowledgment that he dropped the gun in bushes outside Murry's apartment and immediately fled to New York City, offered persuasive support for the conclusion that defendant went to Murry's apartment with a gun, gained

entrance for the purpose of shooting him, and in fact did shoot him and cause his death.

Under the circumstances, viewing the evidence in a light most favorable to the People (see, People v Allah, 71 NY2d 830, 831), we conclude that "there is [a] valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial * * * and as a matter of law satisfy the proof and burden requirements for every element of the crime[s] charged" (People v Bleakley, 69 NY2d 490, 495 [citation omitted]). Further, viewing the evidence in a neutral light (see, People v Carthrens, 171 AD2d 387, 392) but according due deference to the jury's "opportunity to view the witnesses, hear the testimony and observe demeanor" (People v Bleakley, supra, at 495), we conclude that the verdict was not against the weight of the evidence.

Nor are we persuaded that defendant was improperly denied Rosario material at the suppression hearings. At the conclusion of the direct examination of State Police Investigator Joseph Barrett, defendant demanded that Barrett's notebook, containing all notes prepared in connection with his entire investigation of the case, be turned over or at least made available to County Court for in camera inspection. The District Attorney objected, affirmatively representing that he had personally inspected the notebook and had copied all portions that concerned the subject matter of Barrett's hearing testimony and turned them over to defendant. Voicing no disagreement with the District Attorney's representation, defendant nonetheless took the position that he was entitled to "any note that [Barrett] took of any nature whatsoever". Fundamentally, the Rosario rule "has never been interpreted so broadly as to grant defense counsel an open invitation to peruse the prosecutor's file" (People v Poole, 48 NY2d 144, 149) and, in the absence of any indication (or even argument) that the prosecutor withheld any prior statements relating to the witness's testimony (CPL 240.44 [1]), "the representation of a prosecutor, as an officer of the court, ought * * * to suffice to determine the threshold issue of whether or not [Rosario material] exist[s]" (People v Poole, supra, at 149; see, People v Banch, 80 NY2d 610; People v Gallardo, 173 AD2d 636).

Defendant's remaining arguments are either unpreserved for review or found to be lacking in merit.

Cardona, P. J., White, Casey and Spain, JJ., concur. Ordered that the judgment is affirmed.