■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CINDY MANON, Appellant. [640 NYS2d 318] —Peters, J. Appeal from a judgment of the County Court of Ulster County (Bruhn, J.), rendered July 18, 1994, upon a verdict convicting defendant of the crimes of criminally negligent homicide and endangering the welfare of a child.

By indictment dated September 29, 1992, defendant and her live-in companion, Christopher Myers, were indicted on one count of manslaughter in the second degree and one count of endangering the welfare of a child.* The charges stem from the death of defendant's infant son, Kenneth Manon. After a jury trial, defendant was found guilty of criminally negligent homicide and endangering the welfare of a child. Denied youthful offender treatment, she was sentenced for the criminally negligent homicide conviction to five years' probation, the first six months of which were to be spent in the County Jail. She received a concurrent six-month jail sentence for endangering the welfare of a child. On appeal, defendant contends that the verdict was not supported by legally sufficient evidence, was against the weight of the credible evidence and that cumulative trial errors deprived her of a fair trial and due process of law. She also contends that the sentence imposed was harsh and excessive.

The facts reveal that on June 9, 1992, defendant, a 17-year-old mother of two sons, Brian (age two) and Robert (age one),

---

* The indictment against Myers was dismissed and said dismissal was affirmed on appeal by this Court (*People v Myers*, 201 AD2d 855).

gave birth to her third son, Kenneth, who weighed 6 pounds, 14$^1$/$_2$ ounces and achieved an Apgar score of 6/9 at birth. This healthy infant died 65 days later as a result of dehydration and undernutrition. At Kenneth's July 28, 1992 pediatric examination, he weighed 9 pounds, 1 ounce, placing him within the 50th percentile. Other than minor abrasions on his knees, the examination revealed no difficulties. Kenneth was never brought for his next pediatric examination scheduled for August 11, 1992. He died two days thereafter in a filthy bassinet located in a corner of defendant's bedroom. At that time, he weighed only 6 pounds, 5 ounces, having lost 27% of his body weight between the July 28, 1992 examination and his death.

A public health nurse visited defendant at her home on July 6, 1992 and attempted to further communicate with her on July 9, 1992, but there was no answer at the door. She again visited defendant on July 13, 1992, attempted a follow-up visit on July 24, 1992 but could not gain entry, and visited once again on July 29, 1992. Concerned about the conditions in the household, the intense odor therein, garbage piled high and the infant being found in urine-saturated diapers, the public health nurse offered assistance to defendant which was refused. Housekeeping standards and the children's condition caused the public health nurse to file a report with the State Central Register for Child Abuse and Maltreatment. Additional testimony corroborated the public health nurse's assessment of the household and the condition of the infant. Although defendant had no car and no telephone, the record is clear that the public health nurse and others offered assistance, most of which defendant refused. This witness, along with others, testified that defendant would prop the infant up with a bottle despite being told that the infant should be held when fed.

In undertaking our review of the legal sufficiency of the evidence, we must view it in a light most favorable to the People and determine whether " 'there is [a] valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial * * * and as a matter of law satisfy the proof and burden requirements for every element of the crime[s] charged' " (*People v Rose*, 215 AD2d 875, 877 [quoting *People v Bleakley*, 69 NY2d 490, 495 (citation omitted)], *lv denied* 86 NY2d 801). We find that the proof adduced at trial fully supported the jury's verdict.

As noted by the Court of Appeals: "criminally negligent homicide requires not only a failure to perceive a risk of death,

but also some serious blameworthiness in the conduct that caused it. The risk involved must have been 'substantial and unjustifiable', and the failure to perceive that risk must have been a 'gross deviation' from reasonable care" (*People v Boutin*, 75 NY2d 692, 696; *see*, Penal Law § 15.05 [4]). Criminal liability may also be based upon an omission, if such omission is the failure to perform a legally imposed duty such as parents' "nondelegable affirmative duty to provide their children with adequate medical care" (*People v Steinberg*, 79 NY2d 673, 680).

Here, Jeffrey Hubbard, a forensic pathologist, performed an autopsy on August 14, 1992 and testified that the results showed that Kenneth died as the result of dehydration and undernutrition. He testified that as the infant was suffering from these conditions, it would appear lethargic, exhibit poor responsiveness and continuously sleep. His testimony concerning the physical manifestations of dehydration and undernutrition were confirmed by photographs admitted into evidence, as was his description of the infant's conduct before death by the testimony of defendant and others. Hubbard further testified that at least a day or two prior to death, the infant's deterioration and condition would have been readily apparent.

By her own admission, other than her occasional sojourns to the grocery store and the infant's visits with his biological father, Kenneth was in the constant company of defendant. We find the evidence legally sufficient to show that defendant's maintenance of her son's condition of dehydration and undernutrition, without perceiving the grave risk to his young life, was such a " 'gross deviation' from reasonable care" (*People v Boutin, supra*, at 696) so as to constitute criminally negligent homicide (*see, People v Sika*, 138 AD2d 935, *lv denied* 72 NY2d 866; *People v Stubbs*, 122 AD2d 91, 91-92).

Endangering the welfare of a child "is a crime that by its nature may be committed either by one act or by multiple acts and readily permits characterization as a continuing offense over a period of time" (*People v Keindl*, 68 NY2d 410, 421; *see*, Penal Law § 260.10 [1]). The evidence here fully supports a determination that defendant knowingly acted in a manner injurious to the physical well-being of her infant. Testimony and documentary evidence showed, *inter alia*, that she failed to keep necessary medical appointments for him, kept him and his bassinet in a filthy condition and exposed him to a household with garbage piled high, cat feces strewn about and fruit flies invading the kitchen. Moreover, despite advice to the contrary, she would leave this newborn alone on the couch or in other locations with his bottle propped up against him, rather than feed him properly.

As to defendant's contention that the verdict is against the weight of the evidence, again we disagree. While testimony indicated that occasionally defendant's household was neat and odor free and that she did, at times, feed this infant, "viewing the evidence in a neutral light" (*People v Rose*, 215 AD2d 875, 877, *supra*) we are satisfied that the trier of fact did not fail to "give the evidence the weight it should be accorded" (*People v Bleakley*, 69 NY2d 490, 495, *supra*).

As to alleged errors of County Court by admitting photographs of defendant's home and of the infant in his bassinet and at autopsy, "[t]he general rule is that photographs of the deceased are admissible if they tend to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered" (*People v Pobliner*, 32 NY2d 356, 369, *cert denied* 416 US 905). As to the single autopsy photograph admitted through rebuttal testimony, we find it clearly relevant to the disputed issue of the infant's condition both at his death and prior thereto, as well as clearly probative of defendant's awareness of his grave risk of death (*see, People v Harris*, 57 NY2d 335, 345, *cert denied* 460 US 1047; *People v Trotter*, 198 AD2d 606, 607, *lv denied* 82 NY2d 931; *People v Wright*, 192 AD2d 875, 876-877, *lv denied* 82 NY2d 809; *People v Sika*, 138 AD2d 935, 936, *supra*; *People v Sims*, 110 AD2d 214, 222, *lv denied* 67 NY2d 657). The photographs depicting the interior of defendant's home were also properly admitted since they illustrated the testimony of witnesses describing its condition.

Defendant additionally argues that County Court erred in permitting Hubbard's testimony concerning trauma to the infant's arms and ribs. We find that having failed to object to this testimony at trial, the issue is not preserved for our review (*see, People v Johnson*, 213 AD2d 791, 793, *lv denied* 85 NY2d 975; *People v Valenti*, 199 AD2d 617, 618, *lv denied* 83 NY2d 811). Similarly unavailing is defendant's challenge to the court's refusal to declare a mistrial based upon a purported ex parte communication between the court and members of the District Attorney's staff. Not only does our review of the record not support this contention, we also find no abuse in the court's exercise of its discretion in the refusal to grant a mistrial (*see, People v Benway*, 217 AD2d 884, 886).

With regard to those errors allegedly committed by County Court in its charge to the jury, we find that defendant's failure to object thereto at trial precludes our review (*see, People v Johnson, supra*, at 793; *People v Valenti, supra*, at 618). Were

we to so consider defendant's contention, we would conclude that there was no error in the charge and that, overall, defendant received a fair trial.

Finally, we find no extraordinary circumstances or abuse of discretion which would cause us to disturb the sentence imposed. The record reflects that defendant, offered assistance by numerous health and social service agencies, accepted little help which ultimately resulted in the death of this innocent child. Mindful that the sentence is a legal sentence for the offenses of which defendant was convicted, that her criminal negligence caused the death of her infant child, and that the term of incarceration levied upon her is brief (yet longer than the life of her third child), we decline to disturb the sentence and the denial of youthful offender status (*see, People v Diaz,* 221 AD2d 749; *People v Ambrose,* 160 AD2d 1097, 1097-1098, *lv denied* 76 NY2d 784; *People v Mackey,* 136 AD2d 780, *lv denied* 71 NY2d 899; *People v Hayes,* 115 AD2d 910; *People v Cruickshank,* 105 AD2d 325, 333, *affd* 67 NY2d 625).

Mikoll, J. P., Crew III, White and Casey, JJ., concur. Ordered that the judgment is affirmed, and matter remitted to the County Court of Ulster County for further proceedings pursuant to CPL 460.50 (5).