■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v COLIN MURPHY, Appellant. [654 NYS2d 187] —White, J. P. Appeal from a judgment of the County Court of Washington County (Berke, J.), rendered April 28, 1995, upon a verdict convicting defendant of the crimes of murder in the second degree, attempted murder in the second degree (two counts), assault in the first degree (two counts), petit larceny and endangering the welfare of a child.

When Ronald Oudekerk, an admitted drug dealer, completed his weekend jail sentence and returned to his apartment located in the Village of Fort Edward, Washington County, on Sunday, August 8, 1993 at around 7:00 P.M., he discovered three people covered with dried blood: six-year-old Tonya McGarr; her mother, Stephanie McGarr; and Stephanie's 17-year-old sister, Susan Beames, who was nine months pregnant. He later discovered that 20 to 25 grams of cocaine and about $1,700 was removed from a tool box that was kept in a bedroom. The victims were taken to the hospital where it was discovered they had sustained head injuries that appeared to have been inflicted by blows from either the blunt or claw end of a hammer. Beames' injuries were fatal; however, a successful emergency Cesarean section was performed shortly before her death. Both Tonya and Stephanie required neurological surgery on several occasions. Significantly, neither victim could identify their assailant and Stephanie could not recall what had happened.

On September 20, 1994, Stephanie went to her mother's home to retrieve a box containing the cross used at Susan's funeral. Upon opening the box, she discovered a newspaper account of the crime illustrated by defendant's photograph. At that point she recalled what happened on August 8, 1993 and identified defendant as her assailant.

At trial, Stephanie testified that after returning to the apartment on August 7, 1993 at around 11:00 P.M., she and Tonya laid down in the living room while Susan went into the bedroom. Thereafter, Tonya woke her up to tell her that someone was knocking on the door. When she answered the door, she was confronted by defendant whom she knew because he was a frequent customer of Oudekerk. Defendant entered the apartment, stating that he was there to purchase drugs. When Stephanie refused to sell him any, defendant went to the kitchen where he got a hammer. Stephanie told Tonya to call 911, but defendant prevented her from doing so. The only other thing Stephanie recalled is defendant coming toward her with the hammer in his hand.

Defendant contends that Stephanie's testimony should not have been utilized against him as it was inherently untrustworthy because it was based upon her repressed memory. According to the theory of repression, when a person experiences a particularly traumatic event the mind uses repression to push the unacceptable ideas into the unconscious (Ernsdorff and Loftus, *Let Sleeping Memories Lie? Words of Caution About Tolling the Statute of Limitations in Cases of Memory Repression*, 84 J Crim L & Criminology 129, 132 [1993]). As here, a repressed memory may spontaneously resurface as the result of a variety of triggering mechanisms that usually are related to the traumatic event (*id.*, at 137-138). On the critical question of whether such previously repressed memories are authentic, there are no empirical answers, although those recovered in therapeutic settings should be viewed with skepticism given the oftentimes suggestive therapeutic environment (*id.*, at 154-155). That impediment is not present here; nevertheless, we believe that this type of testimony should not be admissible unless it is independently corroborated.

Here, the record contains independent proof that defendant was attempting to buy drugs on August 7, 1993 into the morning of August 8, 1993 and that he was seen in Fort Edward around the time the crime was allegedly committed. There is also evidence that, shortly after the crime, defendant was in possession of a large amount of drugs and money. In our view, this evidence provides sufficient corroboration for Stephanie's testimony. We further note that the jury had the benefit of expert testimony on this subject (*see, Commonwealth of Pennsylvania v Crawford*, 452 Pa Super 354, 682 A2d 323). Accordingly, Stephanie's testimony was properly admitted into evidence.

Defendant also objects to the admission of identification testimony given in conjunction with Tonya's testimony which essentially mirrored her mother's; Tonya, however, was unable to make an in-court identification of defendant. Testimony was then adduced from a police investigator who stated that Tonya had previously selected defendant's picture from a photo array.

CPL 60.25 (1) authorizes a trial court to allow a third party to testify to an out-of-court identification of a defendant when the direct witness is unable, on the basis of present recollection, to identify the defendant. In order to lay a proper foundation for such testimony, there must be evidence establishing a lack of present recollection of the defendant as the perpetrator (*see, People v Quevas*, 81 NY2d 41, 45). This foundation was

established here by evidence that defendant had significantly changed his appearance between August 8, 1993 and the trial (*see, People v Hernandez*, 154 AD2d 197, 202, *lv denied* 76 NY2d 736). Thus, defendant's objection to the identification testimony lacks merit.

Defendant next argues that County Court erred in admitting into evidence testimony regarding his attempts to purchase drugs on August 7, 1993 and the early morning hours of August 8, 1993 prior to the commission of the crime and his consumption of cocaine a few hours after the crimes occurred. Provided its probative value outweighs the risk of undue prejudice to the defendant, a trial court may admit into evidence uncharged crimes when such evidence is relevant to a pertinent issue in the case other than defendant's criminal propensity to commit the crime charged (*see, People v Till*, 87 NY2d 835, 836). We perceive no error in the admission of the foregoing evidence as it served to establish motive, defendant's identity and was necessary to complete the narrative of the episode (*see, People v Lewis*, 69 NY2d 321, 325; *People v Gines*, 36 NY2d 932; *People v Perez*, 221 AD2d 258, 259, *lv denied* 87 NY2d 976). Moreover, County Court minimized any prejudicial effect of the testimony by providing the jury with appropriate limiting instructions (*see, People v Berry*, 222 AD2d 686).

Defendant's last evidentiary objection concerns his unsuccessful attempt to introduce into evidence an out-of-court statement against penal interest made by an unavailable witness who purportedly identified another person as the perpetrator of the crime. Given the fact that the declarant recanted the statement the same day it was made and thereafter was charged with having given a false statement, County Court's decision not to admit the statement on the ground that there was insufficient evidence to assure its trustworthiness and reliability was correct (*see, People v Brensic*, 70 NY2d 9, 15; *see also*, Prince, Richardson on Evidence § 8-107, at 504-505 [Farrell 11th ed]).

Having disposed of defendant's evidentiary objections, we turn to his claim that the verdict finding him guilty of intentional murder in the second degree (Penal Law § 125.25 [1]), attempted intentional murder in the second degree (Penal Law §§ 110.00, 125.25 [1]), depraved indifference assault in the first degree (Penal Law § 120.10 [3]), petit larceny (Penal Law § 155.25) and endangering the welfare of a child (Penal Law § 260.10 [1]) was legally insufficient and against the weight of the evidence. The standard of review in determining whether the evidence was legally sufficient to support a finding of guilt

beyond a reasonable doubt is whether the evidence, viewed in the light most favorable to the People, could lead a rational trier of fact to conclude that the elements of the crime had been proven beyond a reasonable doubt (*see, People v Cabey*, 85 NY2d 417, 420-421).

Viewing the evidence in this perspective, defendant's actions of striking the victims in the head two or three times with a hammer provides legally sufficient evidence for the jury to conclude that he acted with the requisite intent in committing the crimes of intentional murder and attempted intentional murder (*see, People v Horton*, 18 NY2d 355, 359; *People v Bonifacio*, 228 AD2d 166; *People v Gonzalez*, 223 AD2d 653, *lv denied* 88 NY2d 848). While there is no direct evidence that defendant attacked Beames, the jury could have reasonably inferred that he did from the direct evidence of his attacks upon Stephanie and Tonya. Further, defendant's identity as the perpetrator was established by the circumstantial evidence showing that he was searching for drugs prior to the commission of the crimes, was seen in Fort Edward around the time of the crimes and possessed a significant amount of cocaine and money within a few hours of the incident.

To prove depraved indifference assault in the first degree, it must be shown that the defendant, under circumstances evincing a depraved indifference to human life, recklessly engaged in conduct which created a grave risk of death to another person, and thereby caused serious physical injury to another person (Penal Law § 120.10 [3]). Illustrative of such conduct is driving an automobile on a city sidewalk at an excessive speed and striking a pedestrian without applying the brakes, firing several bullets into a house, beating an infant over a five day period, and placing a bomb in a public place (*see, People v Roe*, 74 NY2d 20, 25; *People v Register*, 60 NY2d 270, 277, *cert denied* 466 US 953). In each illustration the basic crime was aggravated by additional egregious conduct. As the proof here does not establish such further egregious conduct, we conclude that the verdict finding defendant guilty of depraved indifference assault is not supported by legally sufficient evidence. We further point out that there was no medical testimony that the victims' injuries exposed them to a grave risk of death (*compare, People v Gaudet*, 115 AD2d 183, 184, *lv denied* 67 NY2d 883). Therefore, we shall reduce defendant's conviction under the fourth and sixth counts of the indictment to assault in the third degree (Penal Law § 120.00 [2]) and reduce the sentences imposed under each count to one year (*see, People v Thacker*, 166 AD2d 102, 109, *lv denied* 79 NY2d 865; *see also*, Penal Law § 70.15 [1]; 8 Zett, NY Crim Prac § 68.1 [5] [iii], at 68-127).

When we review a conviction to ascertain if it is against the weight of the evidence, we view the evidence in a neutral light, giving due deference to the jury's resolution of the credibility issues, to determine whether the jury gave the evidence the weight it should be accorded (*see, People v Bleakley*, 69 NY2d 490, 495; *People v Rose*, 215 AD2d 875, 877, *lv denied* 86 NY2d 801). Although the People's proof suffers from some significant lapses, particularly with regard to the murder weapon, the time of the crime and the fact that Stephanie spoke on the phone to her sister after the crimes had supposedly occurred, we cannot conclude that the jury's verdict that defendant committed the crimes of intentional murder and attempted intentional murder is against the weight of the evidence, since to reach a different verdict we would have to disregard the victim's direct testimony and the aforementioned circumstantial evidence detailing defendant's conduct prior to and subsequent to the crimes (*see, People v Wright*, 214 AD2d 759, 761-762, *lv denied* 86 NY2d 805).

We have examined the evidence supporting defendant's conviction of the crimes of petit larceny and endangering the welfare of a child and find it legally sufficient. We also conclude that these verdicts are not against the weight of the evidence.

We reject defendant's argument that County Court should have granted him a mistrial due to the alleged late delivery of *Rosario* (*People v Rosario*, 9 NY2d 286, *cert denied* 368 US 866) and *Brady* (*Brady v Maryland*, 373 US 83) materials, as it has not been shown that the alleged late delivery substantially prejudiced defendant by denying him a meaningful opportunity to use the materials to cross-examine the People's witnesses or as evidence-in-chief (*see, People v Cortijo*, 70 NY2d 868, 870; *People v Stevens*, 216 AD2d 676, 678, *lv denied* 87 NY2d 908).

Defendant's penultimate argument is that he was denied effective assistance of counsel. The validity of this claim depends, not upon whether defendant was provided with perfect representation (*see, People v Ford*, 86 NY2d 397, 404), but whether the evidence, the law and the circumstances of this case, viewed in totality and as of the time of representation, reveal that defendant's attorney provided meaningful representation (*see, People v Wiggins*, 89 NY2d 872). Defendant contends that his attorney's representation did not meet this standard because he permitted the box containing the cross into evidence despite the fact that it had an evidence tag indicating it was in the possession of the State Police one month prior to the date Stephanie claims to have opened it. We do not equate counsel's failure to object to the admission of this evidence with ineffec-

tive assistance of counsel since, even if the box had not been admitted, Stephanie's testimony relating to her recall of her repressed memory would not have been precluded. In any event, where, as here, defense counsel makes appropriate pretrial motions, actively participates in the trial by effectively cross-examining witnesses, raising objections, presenting witnesses, including an expert witness, and delivers cogent opening and closing statements, a defendant has received meaningful representation (*see, People v Parker*, 220 AD2d 815, 817, *lv denied* 87 NY2d 1023).

Lastly, we find defendant's assertion that the prosecutor's allegedly improper remarks during summation deprived him of a fair trial unpersuasive since he has failed to show that the remarks had " 'a decided tendency to prejudice the jury' " (*People v Halm*, 81 NY2d 819, 821, quoting *People v Ashwal*, 39 NY2d 105, 110). Moreover, County Court's prompt curative instructions were sufficient to ameliorate any prejudice and to insure that defendant received a fair trial (*see, People v Ferguson*, 82 NY2d 837, 838).

Casey, Peters, Spain and Carpinello, JJ., concur. Ordered that the judgment is modified, on the law, by reducing the convictions on counts four and six of the indictment to assault in the third degree (Penal Law § 120.00 [2]) and the sentences imposed on each count to one year in jail, and, as so modified, affirmed.