■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL SPRAGUE, Appellant. [702 NYS2d 132] —Spain, J. Appeal from a judgment of the County Court of Sullivan County (LaBuda, J.), rendered June 9, 1998, upon a verdict convicting defendant of the crimes of assault in the first degree (five counts) and endangering the welfare of a child (two counts).

After a trial, a jury found defendant guilty as charged of five

counts of assault in the first degree (counts 1 through 5), all under Penal Law § 120.10 (3), and two counts of endangering the welfare of a child (counts 6 and 7). The charges stem from the discovery on September 22, 1997 that defendant's three-month-old twins (hereinafter Baby L and Baby M) had sustained serious physical injuries, including numerous bone fractures throughout their bodies in varying stages of healing.[1] The testimony at trial established that on that day, following an 11:00 A.M. visit from a Sullivan County Department of Social Services caseworker, defendant's wife—the babies' mother—left their apartment at about 12:30 P.M. with Baby L to visit a neighbor, leaving Baby M sleeping in a swing and alone with defendant. When the mother returned approximately one-half hour later she encountered defendant leaving the apartment and found Baby M in his crib with his arm bent back and gasping for air. Emergency medical personnel were summoned and found that Baby M was cyanotic (blue from oxygen deprivation) and in continuous seizure activity.

It was subsequently determined that Baby M had suffered skull fractures and life-threatening brain injuries, and had extensive bone fractures to nearly every part of his body, some of which were acute, i.e., occurring within the previous 24 to 48 hours, and others were found to be subacute, i.e., in varying stages of healing. It was also determined that he had suffered permanent brain damage. An examination of Baby L also revealed many fractures throughout his body, which injuries were determined to have been sustained during multiple episodes of abuse.

The police finally located defendant at a neighbor's home later that afternoon. Defendant agreed to accompany them to the station to answer questions concerning Baby M; during the interview, defendant initially denied knowing what happened to Baby M but acknowledged he had been home alone with him that day. Upon further questioning, defendant made several incriminating statements, which included the admission that he liked to hear the babies cry because it made him feel more loved. After defendant was advised of his *Miranda* rights and the seriousness of Baby M's injuries, he stated that he did not know how that could happen but asked, "If I said I did this, what will happen to me?" Later, when defendant was advised

---

**1.** Count 1 charged defendant with assaulting Baby M on September 22, 1997, while counts 2 and 3 charged defendant with assaulting him one week and three weeks prior to that date, respectively. Counts 4 and 5 charged defendant with assaulting Baby L one week and three weeks prior to that date, respectively.

that his wife accused him of inflicting the injuries, defendant stated that it was impossible for her to testify to that because she had not been there and could not know what happened. Notably, he repeatedly insisted that the babies' mother would never have hurt them. At about 12:30 A.M. after defendant was arrested and taken to the booking room, he blurted out, "Yeah, I f* * *ing did it, I lost it," and began to cry loudly and punch and kick the walls. After defendant calmed down, the officer asked why he did it, to which defendant replied that Baby M started to cry and "I lost it." When asked how it happened, defendant stated "I don't know. The baby was in the swing and the next thing I knew he was in the crib." He stated that he did not know if he threw Baby M into the crib. When asked how Baby L got hurt, defendant admitted that he had squeezed him that afternoon or the day before while the mother was asleep because he was crying and also admitted having squeezed Baby M's ribs and twisted his legs.

Following a *Huntley* hearing, County Court ruled that all of defendant's statements were admissible. Upon his convictions for these crimes, defendant was sentenced as a second felony offender to determinate terms of imprisonment of 25 years on each of the five counts of assault in the first degree (counts 1 through 5), which are to run concurrently except that the sentences for count 1 (pertaining to Baby M) and count 4 (pertaining to Baby L) are to run consecutively. He was also sentenced to one year in jail on counts 6 and 7, to be served concurrently with the sentences on counts 2, 3 and 5. Defendant appeals.

We affirm. Initially, defendant contends that the evidence at trial was legally insufficient because there was no medical evidence that the manner in which the injuries alleged in counts 2 through 5 were inflicted created a "grave risk of death" (*see*, Penal Law § 120.10 [3]). In view of defendant's failure to adequately preserve this issue, we decline to consider it as part of our review (*see*, *People v Gray*, 86 NY2d 10, 22-23).[2]

Defendant's contention that the evidence was legally insufficient to establish that he was the perpetrator of injuries sustained by Baby M prior to September 22, 1997 (i.e., counts 2 and 3), or that defendant caused any of Baby L's injuries

---

**2.** Notably, defendant suggests that this Court's holding in *People v Murphy* (235 AD2d 933, *lv denied* 90 NY2d 896) is controlling with respect to the proof necessary to establish assault in the first degree (Penal Law § 120.10 [3]). We specifically reject that portion of *People v Murphy* (*supra*) which states: "We further point out that there was no medical testimony that the victims' injuries exposed them to a grave risk of death" (*id.*, at 936).

(counts 4, 5 and 7), is without merit. Viewing the totality of the direct and circumstantial evidence in the light most favorable to the prosecution, a rational trier of fact would most certainly be justified in finding that the essential elements of these crimes had been proven beyond a reasonable doubt, including defendant's identity as the perpetrator (*see, People v Bleakley*, 69 NY2d 490, 495; *see also, People v Cabey*, 85 NY2d 417, 420-421; *People v Williams*, 84 NY2d 925; *People v Potter*, 255 AD2d 763). Contrary to defendant's contentions, the direct evidence of his assaults on Baby M on September 22, 1997 and on both babies prior to that date included his many incriminating statements, and the extensive medical testimony regarding the nature, timing and probable cause of the babies' injuries (*see, People v Rumble*, 45 NY2d 879, 880; *see also, People v Guidice*, 83 NY2d 630, 636). Further, the jury could have reasonably inferred that defendant was the perpetrator of the injuries to both babies inflicted prior to September 22, 1997 based, *inter alia*, upon the direct evidence of his treatment of Baby M on that day and on the additional compelling circumstantial evidence (*see, People v Murphy*, 235 AD2d 933, 936, *supra*, *lv denied* 90 NY2d 896).

Next, as to defendant's contentions that these seven convictions are against the weight of the evidence on the theory that the trial evidence supports the alternate finding that the babies' mother, and not defendant, committed these crimes, we cannot agree. Viewing the evidence in a neutral light—particularly defendant's admissions pertaining to the September 22, 1997 infliction of life-threatening injuries on Baby M and his repeated statements that their mother would not have hurt them—and giving due deference to the jury's resolution of credibility issues, we perceive no failure on its part to accord the evidence presented its proper or deserving weight (*see, People v Bleakley*, *supra*, at 495; *see also, People v Rose*, 215 AD2d 875, 877, *lv denied* 86 NY2d 801).

Defendant next challenges County Court's ruling denying suppression of his statements. Initially, his assertion that the interrogating police officers failed to scrupulously honor his invocation of his right to remain silent is belied by the testimony adduced at the *Huntley* hearing. That testimony reveals that defendant voluntarily accompanied police to the station where he answered questions for about 45 minutes about Baby M and made statements which were generally exculpatory; defendant then agreed to give a written statement. While one officer was out of the room he told another officer he liked to hear the children cry; when the officer returned

with a form for a written statement and gave defendant *Miranda* warnings, defendant responded in the negative when asked if he wished to talk to the officer. When essentially asked to clarify himself, defendant explained that he did not wish to give a *written* statement but would give one orally, which he proceeded to do. Thus, rather than invoking his right to remain silent, the testimony established that defendant thereby determined the *manner*, i.e., oral, in which he was agreeing to give a statement and waive his silence (*see, People v Hendricks,* 90 NY2d 956, 957; *see also, People v Torres,* 248 AD2d 167, 168, *lv denied* 91 NY2d 1013; *cf., People v Von Werne,* 41 NY2d 584, 587-588; *People v Broadus,* 149 AD2d 602, *lv denied* 74 NY2d 661).

Further, the fact that defendant sporadically sat silent and did not respond when certain specific questions were posed to him by the interviewing police officer while freely responding to other questioning did not, in this context, constitute an unqualified invocation of defendant's right to remain silent so as to require termination of the interrogation or suppression of defendant's subsequent statements (*see, People v Morton,* 231 AD2d 927, 928, *lv denied* 89 NY2d 944; *People v Acquaah,* 167 AD2d 313, 315, *lv denied* 78 NY2d 961; *People v Lewis,* 152 AD2d 600; *People v Madison,* 135 AD2d 655, 658, *affd* 73 NY2d 810; *see also, People v Prater,* 258 AD2d 600, *lv denied* 93 NY2d 1005; *People v Cohen,* 226 AD2d 903, 904, *revd on other grounds* 90 NY2d 632). Moreover, defendant's subsequent postarrest incriminating statement, "Yeah, I f* * *ing did it, I lost it," which he blurted out en route to the booking room, was not elicited as a result of or during police questioning or in an interrogating environment. Thus, we perceive no basis upon which to disturb County Court's conclusions that it was indeed spontaneous and admissible (*see, People v Damiano,* 87 NY2d 477, 486-487; *People v Romano,* 176 AD2d 595, *lv denied* 79 NY2d 863; *see also, People v Ferro,* 63 NY2d 316, 319, *cert denied* 472 US 1007; *People v Rivers,* 56 NY2d 476, 479; *People v Lanahan,* 55 NY2d 711; *People v Stoesser,* 53 NY2d 648; *People v Grimaldi,* 52 NY2d 611; *People v Felton,* 238 AD2d 288, *lv denied* 90 NY2d 904; *People v Richardson,* 235 AD2d 502, *lv denied* 89 NY2d 1014).

However, we agree with defendant's assertion that County Court erred in permitting the People *at trial*—over defendant's objection—to elicit testimony from the interviewing police officers that during their interrogation of defendant he remained silent when certain questions were posed. This testimony included the specific incriminating questions posed to defen-

dant and the fact that defendant did not provide a reply. It is firmly established that a defendant's silence, whether before or after an arrest, cannot be so used by the People as part of their direct case (*see, People v Von Werne*, 41 NY2d 584, 587-588, *supra*; *see also, Miranda v Arizona*, 384 US 436, 468, n 37; *People v Hendricks*, 90 NY2d 956, 957, *supra*; *People v Basora*, 75 NY2d 992; *People v De George*, 73 NY2d 614, 620-621; *People v Rothschild*, 35 NY2d 355, 359; *People v Shaffer*, 223 AD2d 755, *lv denied* 87 NY2d 1025; *People v Williams*, 67 AD2d 613).

Despite this unfortunate error, we nonetheless conclude that the evidence of defendant's guilt was indeed overwhelming and that the error was not of sufficient magnitude under the circumstances to deny defendant a fair trial (*see, People v Crimmins*, 36 NY2d 230, 237, 241; *People v McLean*, 243 AD2d 756, *lv denied* 91 NY2d 928; *People v Shaffer*, *supra*, at 756). Notably, while no curative instruction was requested, County Court made no reference to defendant's silence in its charge and the prosecutor did not comment on it in his summation.

Defendant's remaining contentions have been reviewed and determined to be either unpreserved for our review or without merit.

Cardona, P. J., Yesawich Jr., Carpinello and Graffeo, JJ., concur. Ordered that the judgment is affirmed.