THIRD DEPARTMENT, NOVEMBER, 2000

(November 2, 2000)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES SPELLS, Appellant. [715 NYS2d 486] —Mercure, J. P. Appeal from a judgment of the County Court of Schenectady County (Eidens, J.), rendered June 12, 1998, upon a verdict convicting defendant of the crimes of murder in the first degree, robbery in the first degree (two counts), robbery in the second degree, criminal possession of a weapon in the second degree and criminal use of a firearm in the first degree.

Defendant's convictions arise out of his participation, together with codefendant Romoan Walker, in the robbery and execution-style murder of Maurice Hines in the City of Sche-

nectady, Schenectady County, on December 1, 1996. County Court sentenced defendant as a second felony offender to the greatest permissible sentence for each of his convictions, with each sentence to run consecutively to all of the others. Defendant appeals.

Initially, we reject the contention that County Court erred in denying defendant's *Batson* challenge (*see, Batson v Kentucky*, 476 US 79) to the People's exclusion of juror No. 110, a black woman. We perceive no valid basis for disturbing County Court's determination that a sufficient nonpretextual motivation for the peremptory challenge was provided by the juror's statement that a close friend of hers had been shot to death by a police officer and was at the time approximately the same age as Hines (*see, People v Allen*, 86 NY2d 101, 109-110). In our view, neither the prosecutor's erroneous recollection as to whether the juror had stated the name of her friend, a discrepancy concerning the approximate date of the incident nor the juror's indication that she could still serve fairly on the jury mandates a contrary conclusion (*see, People v Childress*, 81 NY2d 263, 267 268).

Both juror No. 110 and juror No. 162 were familiar with the victim of the prior shooting and provided information about the incident. Whereas juror No. 162 indicated that the shooting had occurred approximately seven or eight years prior to the 1998 trial, juror No. 110 stated that it had occurred in 1984 or 1985. Apparently familiar with the incident himself, in his address on the *Batson* motion, the prosecutor identified the victim by name and indicated that he had been shot in 1991 by an officer employed by the City of Schenectady Police Department. In its ruling, County Court rejected any reliance upon the date of the incident or the identity of the victim, but indicated that the dispositive consideration was juror No. 110's relationship with an individual "killed as a result of a bullet fired by a law enforcement official who was with the Schenectady Police Department."

Nor are we persuaded that defendant was denied his constitutional right to confront and cross-examine Walker. Prior to trial, Walker had entered a negotiated plea of guilty to the crime of murder in the second degree in connection with a plea bargain providing for a sentence of 17½ years to life and Walker's cooperation in the prosecution of defendant (*see, People v Walker*, 266 AD2d 727). At trial, the People called Walker as a witness and he willingly responded to preliminary questions concerning his plea of guilty and his activities with defendant earlier on the evening of December 1, 1996. When

the questioning began to focus on the participants' actual criminal activity, however, Walker invoked his 5th Amendment privilege against self-incrimination and refused to answer any further questions. Ultimately, County Court found Walker to be in contempt of court and, following the prosecutor's refusal to state that his questioning was concluded, ruled that direct examination had been completed and that defendant was free to cross-examine the witness. Defendant declined.

Contrary to defendant's assertion, the record provides no basis for a finding that the People deliberately called Walker solely to elicit a claim of privilege (*cf.*, *People v Vargas*, 86 NY2d 215, 222). To the contrary, it appears that Walker's plea bargain gave the People every reason to expect that he would cooperate. In addition, neither the People nor County Court deprived defendant of an opportunity to cross-examine Walker. Rather, the failure to cross-examine was based solely on defendant's own tactical decision. We also note that, although there may have been some basis for striking Walker's direct testimony, defendant made no such request, and County Court properly instructed the jury that no inferences were to be drawn for either side based upon Walker's assertion of the 5th Amendment privilege and that it could not speculate as to possible answers or consider questions that Walker refused to answer. Although the People's summation included a brief reference to Walker's testimony, no remarks were made regarding any inferences to be drawn from Walker's invocation of the privilege (*see*, *People v Diaz*, 249 AD2d 698, 700, *lv denied* 92 NY2d 924).

Next, we reject defendant's *pro se* challenge concerning the use of *Sandoval* and *Molineux* material at trial. In his argument, defendant seems not to realize that the People gave detailed pretrial notice of the *Sandoval/Molineux* material that they intended to use at trial, that County Court conducted a hearing thereon and, after considering defendant's numerous objections, prohibited mention of 21 of the 32 proffered *Sandoval* acts, allowed limited admission of five, and allowed outright mention of only six. Of the seven proffered *Molineux* acts, four were fully allowed and two were limited. Defendant interposes no challenge to County Court's *Sandoval/Molineux* ruling but merely contests certain of the People's inquiries, which the record shows to have been either entirely consistent with County Court's ruling or involved prior bad acts or criminal convictions that defendant himself introduced into evidence.

Nor are we persuaded by defendant's attack on the sufficiency of the trial evidence. Several witnesses placed defendant

at the scene of the crime, armed with a nine-millimeter handgun, the same type used to kill Hines. The evidence also showed that defendant was in possession of Hines' pager and cell phone after the robbery and then disposed of those items in a sewer. In addition, defendant admitted, and in fact bragged about, his commission of the crimes to a number of individuals whose trial testimony indicated that defendant took Hines' pager, cell phone and marihuana, forced Hines to the floor, shot him twice in the head and then forced Walker to also shoot him once in the head. Thus, viewing the evidence in a light most favorable to the People (*see, People v Allah*, 71 NY2d 830, 831), we conclude that "there is [a] valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial * * * and as a matter of law satisfy the proof and burden requirements for every element of the crime[s] charged" (*People v Bleakley*, 69 NY2d 490, 495 [citation omitted]). Further, viewing the evidence in a neutral light (*see, People v Carthrens*, 171 AD2d 387, 392) but according due deference to the jury's "opportunity to view the witnesses, hear the testimony and observe demeanor" (*People v Bleakley, supra*, at 495), we conclude that the verdict was not against the weight of the evidence (*People v Rose [Cousins]*, 215 AD2d 875, 877, *lvs denied* 86 NY2d 793, 801).

Although a likely academic analysis by virtue of defendant's sentence to imprisonment for life without parole on the conviction of murder in the first degree, there is merit to defendant's contention that Penal Law § 70.25 (2) precluded County Court's imposition of consecutive sentences in this case. In fact, the People make no argument to the contrary, expressly "tak[ing] no position" on the matter. As in *People v Sessoms* (200 AD2d 850, *lv denied* 83 NY2d 915), defendant's possession of the nine-millimeter handgun was the basis for his conviction of criminal possession of a weapon in the second degree in violation of Penal Law § 265.03 under count 8 of the indictment and was also an element of robbery in the first degree in violation of Penal Law § 160.15 (2) under count 6 of the indictment and criminal use of a firearm in the first degree in violation of Penal Law § 265.09 (1) (a) under count 9. Clearly, all three convictions arose out of a continuous transaction; although defendant possessed the handgun before he came into contact with Hines, there was no evidence that he intended to use it unlawfully on anyone other than Hines (*see, People v Battle*, 249 AD2d 116, 118; *see also, People v Geddes*, 258 AD2d 679, 681, *lv denied* 93 NY2d 970; *People v Sessoms, supra*, at 851).

Further, concurrent sentencing was required with regard to

the conviction under count 1, charging murder in the first degree in violation of Penal Law § 125.27 (1) (a) (vii), and count 5, charging robbery in the first degree in violation of Penal Law § 160.15 (1), because the act constituting the former can be a material element of the latter and the act constituting the homicide was not separate or distinct from the "serious physical injury" element of robbery in the first degree (*see*, Penal Law § 70.25 [2]; *People v Laureano*, 87 NY2d 640, 644-645; *People v Hyde*, 240 AD2d 849, 851-852, *lv denied* 91 NY2d 874). Finally, since the three counts of robbery (counts 5, 6 and 7) all arose out of a single act, the sentences imposed thereon were required to be concurrent (*see*, *People v Ramirez*, 89 NY2d 444, 452-453; *People v Henry*, 273 AD2d 478, *lv denied* 95 NY2d 866).

Defendant's additional contentions have been considered and found to be lacking in merit.

Crew III, Spain, Rose and Lahtinen, JJ., concur. Ordered that the judgment is modified, on the law, by directing that all terms of imprisonment imposed by County Court shall be served concurrently with one another, and, as so modified, affirmed.