People v Miley (2024 NY Slip Op 03852)

People v Miley

2024 NY Slip Op 03852

Decided on July 18, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 18, 2024

CR-23-0735
[*1]The People of the State of New York, Respondent,
v
David Miley, Appellant.

Calendar Date:June 4, 2024

Before:Egan Jr., J.P., Clark, Reynolds Fitzgerald, McShan and Powers, JJ.

Hug Law PLLC, Albany (Matthew C. Hug of counsel), for appellant.
P. David Soares, District Attorney, Albany (Daniel J. Young of counsel), for respondent.

Egan Jr., J.P.
Appeal from a judgment of the County Court of Albany County (Andra Ackerman, J.), rendered December 3, 2021, upon a verdict convicting defendant of the crimes of attempted murder in the second degree and criminal possession of a weapon in the second degree.
Shortly after 9:00 p.m. on August 2, 2020, gunfire erupted in front of a residential building on Cortland Place in the City of Albany and the victim was repeatedly shot. Neighbors heard five or six shots that some initially mistook for fireworks, then one more shot following a pause. After hearing the shots, various neighbors looked out of their windows and saw a vehicle driving away, individuals fleeing on foot, or both. One of the neighbors who called 911 told the dispatcher that she was looking out the window following the initial volley of shots and saw a man stand over the victim and shoot him point blank in the back. Police arrived soon after to find the victim lying in the street and another man standing near him. The neighbor was still on the line with 911 and urged the dispatcher to tell the responding officers that the man — who she described as a shirtless Black male wearing a hat and red shorts — was "pretending like he didn't shoot [the victim] but . . . [was] the guy" she had seen do it. The man walked away before the neighbor's message was relayed, but he returned a few minutes later, and he was spotted by officers and detained.
A showup identification was conducted, and the neighbor identified the man as the shooter. He was then placed under arrest and transported back to the police station for questioning. Video footage from the station shows the man sitting in an interrogation room and an investigator leaving him alone after telling him that he could not yet use the bathroom and wash his hands because his hands were going to be tested for gunshot residue. Moments later, the video shows him pouring some of the beverage he was drinking onto a nearby chair and scrubbing his right hand on the chair. A search of the nearby building on Cortland Place and its surroundings did not recover the weapon used to shoot the victim; moreover, the victim himself was uncooperative.
Defendant was the man in question, and he was charged in an indictment with attempted murder in the second degree, criminal use of a weapon in the first degree and criminal possession of a weapon in the second degree. County Court, upon defendant's motion, dismissed the criminal use of a weapon count. Following a hearing, County Court denied his motion to suppress, among other things, the showup identification. A jury trial was then conducted and, at its conclusion, defendant was found guilty of attempted murder in the second degree and criminal possession of a weapon in the second degree. County Court imposed concurrent sentences on those counts, amounting to 25 years in prison to be followed by five years of postrelease supervision. Defendant appeals.
We affirm. Defendant argues that the verdict is not supported [*2]by legally sufficient proof and is against the weight of the evidence because the eyewitness identification of him as the shooter was unworthy of belief and there was no physical evidence to tie him to the crime. In that regard, the neighbor who saw the final shot being fired testified as to how she first looked out the window after hearing men arguing outside and what she thought were firecrackers. She saw a woman running down Cortland Place toward Washington Avenue, and called 911 after spotting the victim lying on the ground with a man in red shorts crouching over him and aggressively talking to him. The neighbor was still on the phone with the 911 dispatcher when she saw the man in red shorts walk into the nearby building — where, the trial proof demonstrated, defendant lived — and come out carrying a gun. She then watched the man walk back to the victim, stand over him and shoot him in the back at point blank range. The man stood over the victim for a little while and, as sirens announced the imminent arrival of the police, he walked back into the house for a couple of seconds and came out emptyhanded. She continued to watch as the man, who was the only person in the area aside from the victim, acted as though he was concerned for the victim. She advised the 911 dispatcher that the man had actually shot the victim and gave a description of the man, both before and after he walked away from the scene. The testimony of one of the responding officers, as well as body camera footage, further demonstrated that defendant was the man matching that description and that he was apprehended after the description was relayed to officers and he returned to the scene following a brief absence.
To be sure, the neighbor mixed up the color of the shooter's hat at points on the night of the shooting, and she acknowledged that the lighting in the area where the shooting occurred was not good enough for her to "make out faces." More significantly, she admitted that she could "not recognize [the man's] face" in court and did not identify defendant as the shooter during her testimony. The trial evidence nevertheless provided solid reasons for believing that, despite those issues, the neighbor had accurately observed what had happened. For instance, the neighbor made clear in her testimony that she had an unobstructed view of the area where the shooting occurred and that it was well enough lit so that "figures and clothing, items and objects were pretty clear" from her vantage point. Another neighbor who also called 911 testified that he looked out his window after the final shot had been fired and, like the neighbor, he saw two men outside, one crawling on the ground and another, wearing red shorts, running into the nearby building where defendant lived before coming out again. The testimony of a responding officer, as well as body camera footage, reflected that defendant was the man wearing the red shorts that the neighbor had observed, and defendant was milling [*3]around the area upon the officers' arrival in the manner she described. The trial proof further showed that, following his apprehension, defendant attempted to scrub his right hand clean at the police station after being advised that his hands were going to be tested for gunshot residue, behavior "which suggested consciousness of guilt and was 'circumstantial corroborating evidence of identity' " (People v Banks, 181 AD3d 973, 975 [3d Dept 2020], lv denied 35 NY3d 1025 [2020], quoting People v Jones, 276 AD2d 292, 292 [1st Dept 2000], lv denied 95 NY2d 965 [2000]; see People v Steinberg, 170 AD2d 50, 67-68 [1st Dept 1991], affd 79 NY2d 673 [1992]).
There are undoubtedly "rare instances" where a conviction must be reversed because "the evidence failed as a matter of law to establish guilt based on an eyewitness identification beyond a reasonable doubt [in that] 'hopeless contradictions' by the sole prosecution witness ma[d]e his or her testimony incredible or unreliable as a matter of law," but the foregoing proof reflects that this case is not one of them (People v Calabria, 3 NY3d 80, 82 [2004], quoting People v Foster, 64 NY2d 1144, 1147 [1985]; see People v Delamota, 18 NY3d 107, 114-115 [2011]). Testimony is only "incredible as a matter of law [where] it is inherently unworthy of belief because it is manifestly untrue, physically impossible or contrary to human experience," and the neighbor's testimony was both internally consistent to a large degree and supported in significant respects by the testimony of responding officers, body camera video footage, her identification of defendant as the shooter in the immediate aftermath of the crime and defendant's own actions later that night (People v Johnson, 176 AD3d 1392, 1393 [3d Dept 2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 1129 [2020]). The neighbor's testimony was accordingly not incredible as a matter of law and, when coupled with the supporting proof, it constituted legally sufficient evidence to support the verdict in that it provided a valid line of reasoning and permissible inferences from which the jury could rationally conclude beyond a reasonable doubt that defendant had a loaded handgun and used it to shoot the victim with the requisite intent to kill (see People v Kancharla, 23 NY3d 294, 302 [2014]; People v Danielson, 9 NY3d 342, 349 [2007]; People v Campbell, 196 AD3d 834, 836 [3d Dept 2021], lv denied 37 NY3d 1025 [2021]; People v Banks, 181 AD3d at 975). The jury credited that proof despite the discrepancies in the neighbor's account — which were explored during cross-examination by defense counsel — and her failure to identify defendant as the shooter at trial. We defer to that assessment of credibility and, after viewing the evidence in a neutral light, are further satisfied that the verdict is supported by the weight of the evidence (see People v Danielson, 9 NY3d at 348; People v Luna, ___ AD3d ___, ___, 2024 NY Slip Op 03201, *1 [3d Dept 2024]; [*4]People v Banks, 181 AD3d at 975).
Next, we are unpersuaded by defendant's contentions regarding the propriety of the showup identification. A showup identification is permissible if it was reasonable under the circumstances, meaning that it was conducted in close geographic and temporal proximity to the crime, and was not conducted in an unduly suggestive manner (see People v Colvin, 218 AD3d 1016, 1020 [3d Dept 2023], lv denied 40 NY3d 1038 [2023]; People v Bateman, 124 AD3d 983, 984 [3d Dept 2015], lv denied 25 NY3d 949 [2015]). The suppression hearing testimony reflected that the showup occurred approximately 35 minutes after the 911 calls were made and police were dispatched to the crime scene, and it occurred approximately 50 to 75 feet away from where the victim had been lying on the ground. During the showup itself, two officers stood near defendant, who was standing and handcuffed behind his back, near a street corner while the neighbor, who was afraid to go to the scene, was driven past in the back of a marked police vehicle. The testimony of the detective who was driving that vehicle, as well as body camera video footage, reflected that the neighbor immediately identified defendant as the man who she had watched shoot the victim. County Court determined, and we agree, that those "circumstances demonstrated that the showup identification occurred close in location and in time to the crime," and the fact that defendant "was presented to the victim in handcuffs did not, as a matter of law, render the procedure unduly suggestive" (People v Colvin, 218 AD3d at 1020 [internal quotation marks and citation omitted]; see People v Hilton, 166 AD3d 1316, 1320 [3d Dept 2018], lv denied 32 NY3d 1205 [2019]). County Court, as a result, properly denied defendant's motion to suppress the showup identification.
Next, County Court properly allowed evidence establishing the neighbor's showup identification of defendant at trial. "[W]here at the time of trial [an] eyewitness is unable to recognize the defendant, testimony of his [or her] own previous identification, as well as testimony of third persons 'to whom the witness promptly declared his [or her] recognition on such occasion,' is allowable as evidence-in-chief of identification" (People v Bayron, 66 NY2d 77, 81 [1985], quoting CPL 60.25 [1] [b]; see People v Quevas, 81 NY2d 41, 45 [1993]). The neighbor testified at trial that she did "not recognize [the shooter's] face" in the courtroom and could not identify him. This was unsurprising given her testimony that she "couldn't make out faces" at the time of the shooting because of the lighting conditions on the street, but had no problem discerning "figures and clothing, items and objects." Indeed, her description of the shooter to the 911 dispatcher hinged upon the clothes he was wearing, and she added that the shooter had a thin build when describing him to a detective shortly before defendant was detained and she identified him during the showup. [*5]It therefore appears that her inability to recognize defendant in the courtroom, to the extent that it was not simply due to the year that had passed between the shooting and the trial, arose from the fact that she identified him as the shooter based upon the clothes he was wearing and his build. Accordingly, as the neighbor did not recognize defendant at trial because of changes to his "appearance that were critical to her identification," County Court properly permitted the People to present evidence of the showup identification pursuant to CPL 60.25 (People v Vasquez, 216 AD2d 176, 176 [1st Dept 1995], affd 88 NY2d 561 [1996]; see People v Murphy, 235 AD2d 933, 934-935 [3d Dept 1997], lv denied 90 NY2d 896 [1997]; People v Hernandez, 154 AD2d 197, 200-201 [1st Dept 1990], lv denied 76 NY2d 736 [1990]).
Defendant's remaining contention, that he received the ineffective assistance of counsel, is unpersuasive. Initially, to the extent that defendant complains about trial counsel's failure to present what he speculates would be favorable testimony from experts on various subjects, such involves matters outside of the record that are properly addressed in a CPL article 440 motion (see People v Horton, 173 AD3d 1338, 1341 [3d Dept 2019], lv denied 34 NY3d 933 [2019]; People v Narine, 153 AD3d 1280, 1280 [2d Dept 2017], lv denied 30 NY3d 1062 [2017]). The record that is before us shows a capable performance by counsel, who pursued a cogent trial strategy of suggesting that the neighbor was simply mistaken in her identification of defendant as the shooter, drawing out various discrepancies in her account upon cross-examination and eliciting testimony reflecting that the police had not explored various avenues of investigation that might have uncovered the actual identity of the shooter. Defendant nitpicks the way that counsel executed that strategy but, suffice it to say, " 'counsel's efforts should not be second-guessed with the clarity of hindsight to determine how the defense might have been more effective', as 'the Constitution guarantees the accused a fair trial, not necessarily a perfect one' " (People v Perillo, 144 AD3d 1399, 1403 [3d Dept 2016] [brackets omitted], lv denied 29 NY3d 951 [2017], quoting People v Benevento, 91 NY2d 708, 712 [1998]). After viewing counsel's performance in its totality, we are satisfied that defendant received meaningful representation (see People v Banks, 181 AD3d at 976-977; People v Edwards, 96 AD3d 1089, 1091-1092 [3d Dept 2012], lv denied 19 NY3d 1102 [2012]).
Clark, Reynolds Fitzgerald, McShan and Powers, JJ., concur.
ORDERED that the judgment is affirmed.