■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM C. MOONEY, Appellant. (Appeal No. 1.)—Judgment unanimously affirmed. Memorandum: County Court properly denied defendant's motion to suppress the statement that he made to the police in Waukegan, Illinois. That statement, made after defendant said that he would make no statement without the presence of an attorney, was not the result of police questioning or its equivalent. The single remark that the police made to defendant did not constitute conduct which the police could reasonably have anticipated would evoke a declaration from defendant concerning a crime in which he had participated. When defendant first mentioned that he had knowledge of a more serious crime than the one for which he was arrested, the police had no reason to believe that defendant was involved in that crime, but had reason to believe only that he might be willing to reveal information that he had heard from others. Moreover, the error, if any, in admitting defendant's statement at trial was harmless in view of the other overwhelming evidence of defendant's guilt *(see, People v Crimmins,* 36 NY2d 230). (Appeal from judgment of Oneida County Court, Darrigrand, J.—murder, second degree.) Present—Callahan, J. P., Doerr, Boomer, Green and Davis, JJ.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM C. MOONEY, Appellant. (Appeal No. 2.)—Order unanimously affirmed. Memorandum: Under the particular circumstances of this case, the failure of the District Attorney to reveal to defense counsel certain *Brady* material does not warrant the vacatur of defendant's conviction. Failure to reveal requested *Brady* material requires reversal or vacation of a conviction if there is "a 'reasonable possibility' that the failure to disclose the exculpatory [material] contributed to the verdict" *(People v Vilardi,* 76 NY2d 67, 77). Here, there was no such reasonable possibility. Not only was the proof of defendant's guilt overwhelming, but the undisclosed *Brady* material, which tended to impeach prosecution witness Zepin, would not have added significantly to the impeaching testimony heard by the jury.

The record establishes that defendant was recruited by the admitted killer, codefendant Parry, to accompany him to the Tri-Willow Nursery near Rome, New York, to steal silver and valuable coins. Defendant traveled from his home to the Rome area where he and Parry stayed in a motel together the night before the murders. The day of the murders, Parry was seen in the Tri-Willow Nursery accompanied by another person. After the bodies of four occupants of the Tri-Willow Nursery were found on the floor with bullet wounds in the back of their heads, Parry and defendant drove together to St. Petersburg, Florida. The wallet of one of the victims was found in the river beneath a bridge crossed by defendant and Parry on their way to St. Petersburg. When they arrived at St. Petersburg, they were seen with the silver coins and other items missing from the Tri-Willow Nursery. There was conclusive evidence that defendant received a share of the proceeds of the crime. After he was arrested in Illinois for a robbery committed in that State, defendant told the police that he had knowledge of a murder that occurred during the robbery of a coin dealer in New York State.

Parry, the codefendant, testified that he recruited defendant to assist him in the robbery. The morning of the robbery, according to Parry, defendant became sick and Parry left him at a donut shop in Rome, New York, while he, Parry, went to the Tri-Willow Nursery, tied up the four occupants of the store, shot them in the back of their heads, and stole the silver and coins. He picked up defendant at the donut shop and the two of them drove to St. Petersburg, Florida. Most inculpatory, however, was Parry's testimony that defendant gave Parry the gun Parry used to shoot the victims and that defendant received a share of the proceeds of the robbery.

Based on this overwhelming proof, the jury found defendant guilty of four counts of felony murder. The jury, of course, was free to disbelieve Parry's testimony that defendant was not present with him when the robbery and shootings occurred. But even according to Parry's testimony, defendant was an accomplice to the robbery and, thus, was guilty of the felony murders that occurred during the course of the robbery. Defendant had intended that the robbery be committed and he aided in its commission (see, Penal Law § 20.00). Although, according to Parry, defendant did not accompany Parry to the place of the robbery, defendant did not abandon the enterprise. In fact, after the robbery, he rode with Parry to St. Petersburg where they both shared in the proceeds of the robbery.

The undisclosed *Brady* material, which forms the basis for defendant's motion to vacate his conviction, concerns a promise made by the District Attorney to prosecution witness Zepin to induce him to testify. Zepin, a fellow inmate of defendant in an Illinois prison, testified that defendant told him in detail about the commission of the robbery and murders at the Tri-Willow Nursery. Defendant told Zepin that the victims were tied up and placed on the floor in a back room and that he shot one of them and his partner shot the others. At trial, Zepin was questioned about any promises made to induce him to testify. He testified that, at the time he made his statements to the Sheriff's investigators, no promises were made to him and that his testimony was basically the same as his statement. He had been sentenced in Federal court in Illinois, he said, and after he gave his statement he made a motion for resentencing. The Judge told him that if he cooperated by testifying at defendant's trial, the Judge would take the fact of his cooperation into consideration at the time of resentencing. Zepin told the jury that he expected that the fact that he had testified would be brought to the Judge's attention. He admitted that his motive for testifying was to get "a better deal" for himself on resentencing.

The additional information concerning promises made to Zepin, not revealed to defendant or to the jury, was the promise of the District Attorney that he would inform the Federal Judge of Zepin's cooperation by testifying and that he would "do all he could" for Zepin. This additional information would not have added significantly to the impeachment evidence heard by the jury, because the jury had heard that Zepin had an extensive criminal record and it had heard the promise of the Federal Judge and Zepin's motive for testifying.

Under all of the circumstances—the overwhelming proof of defendant's guilt, even without Zepin's testimony, and the fact that the undisclosed *Brady* material would not have added significantly to the impeachment evidence heard by the jury— there was no reasonable possibility that, had the jury heard the additional impeachment evidence, it would have reached a different result. (Appeal from order of Oneida County Court, Parker, J.—CPL art 440.) Present—Callahan, J. P., Doerr, Boomer, Green and Davis, JJ.