■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v RADZO RADONCIC, Respondent. [657 NYS2d 627] —Order, Supreme Court, New York County (Patricia Anne Williams, J.), entered March 4, 1996, granting defendant's motion to suppress physical evidence, unanimously reversed, on the law, and the motion denied.

At the hearing on defendant's motion to suppress, Detective

Gerard Gardiner testified that, on April 1, 1995, he received a telephone call from Michelle Bonocore, who told him that her American Express card was missing and that the company had told her that, between March 23, 1995 and March 26, 1995, someone had made $5,900 in unauthorized charges, including charges at two restaurants in Long Island, a gas station in Manhattan and a clothing store in the Bronx. The largest single purchase was at the Central Furniture Store in the Bronx in the amount of $2,850. She also told him that she had spoken to the manager of that store who told her that a man and a woman had made the purchase and that he had obtained the man's beeper number and the license plate number of a car that the two individuals had been driving.

After confirming Bonocore's information with American Express, Gardiner contacted the Carmelina Restaurant in Long Island, where one of the charges was made. A waiter at the restaurant told him that he remembered the man and woman who charged their meal and described the woman as having a tattoo on her hand. Gardiner then contacted the manager of the furniture store, who told him that a man and woman came into the store and looked at furniture and that the woman then came to the counter and purchased certain items with a credit card that bore Bonocore's name and her own photograph. She and the man, whom the manager described as a white male, 6 feet tall, medium build, about 200 pounds, with black straight hair and a moustache, declined to have the furniture delivered, even though the store provided free delivery. However, after they carried some of the items out of the store they realized they could not fit everything in the car and they arranged to have the rest of the furniture delivered to 235 Seaman Avenue. When the furniture was delivered, the man who made the purchase at the store accepted it downstairs and refused to let the delivery persons bring it up to the apartment.

After checking the license plate number obtained by the manager of the furniture store, who had written it down because he felt that the initial refusal by the man and woman of free delivery was suspicious, Gardiner ascertained that the car was registered to Nam Jian Li. When Gardiner called Ms. Li, she told him that the defendant, who was a friend of hers and used to be a foreman in her apartment building, had asked her to register his car in her name because he could not get a driver's license. She described the defendant as being tall with a moustache, and provided Gardiner with a partial number for the defendant's beeper, which matched the number the man

had given the manager of the furniture store. Li also gave him the defendant's current address, which was the same Manhattan address as Michelle Bonocore's home address, and told him that she also knew that the defendant had a relative who lived on Seaman Avenue.

When Gardiner asked Bonocore if she recognized the name of the defendant, she said that he was an assistant superintendent of the building she lived in and that he lived in apartment 2-A. She also told him that she had not given him permission to enter her apartment but that the superintendent had the key to the lower lock of her apartment. However, he did not have a key to the upper lock. She then told Gardiner that she sometimes left the upper lock unlocked when she did her laundry and that the last time she saw her credit card, it was in her apartment. She also described the defendant similarly to the way Li had described him. Li subsequently contacted Gardiner and provided him with the full number of the defendant's beeper as well as his home telephone number and the complete address of his brother's apartment on Seaman Avenue, which was the same address as that to which the furniture had been delivered.

On April 17, 1995, Gardiner went to Ms. Bonocore's building, where he saw a man matching the description he had been given standing inside the locked door leading to the building. The man let him in and, when Gardiner asked who he was, the man, i.e., the defendant, told him his name was Ricky Radoncic and that he was the super of the building. Gardiner then placed the defendant under arrest. When he searched the defendant, he recovered keys, a beeper, the registration and insurance card for the car that was registered to Nam Jian Li, and two credit cards in the names of Dominique Ellner and Peter Kochansky, who were later determined to be residents of the building. The manager of the furniture store thereafter identified the defendant at a lineup.

At the conclusion of the hearing, the Supreme Court granted the defendant's motion to suppress the items seized from his person at his arrest based on its conclusion that the police lacked probable cause. The court found that the woman the defendant was with at the furniture store was the person in possession of the credit card, that her picture appeared on the card and that, although "it has not been expressly stated", if the transaction occurred, the woman must have signed the sales slip. Further noting that Gardiner never questioned the people living at the Seaman Avenue apartment concerning the furniture and that he never questioned the defendant before

arresting him, the court found that, based on the evidence that was adduced at the hearing, there was nothing to indicate that the defendant knew that the card used by the woman was a stolen card or that he acted in concert with the woman. Accordingly, the court found that the People failed to establish probable cause for the defendant's arrest for criminal possession of stolen property.

We reverse.

In order to sustain a finding that the police had probable cause to arrest, the evidence must show that they were possessed of information which would lead a reasonable person to conclude that it is "more probable than not" (*People v Carrasquillo*, 54 NY2d 248, 254) that a crime has been committed and that the person being arrested is the person who committed it (CPL 70.10 [2]).* A lawful arrest "does not require proof to a mathematical certainty, or proof beyond a reasonable doubt" (*People v Mercado*, 68 NY2d 874, 877, *cert denied* 479 US 1095).

Here, at the time he arrested the defendant, Detective Gardiner had apparently reliable information showing that the defendant had access to the apartment where a stolen credit card had last been seen, that he accompanied a woman who had used the same stolen credit card to purchase furniture, that he and the woman had been using his car, that he had left his own beeper number with the furniture store, that he had initially refused free delivery, that the furniture was delivered to an address at which the defendant's brother lived and that defendant accepted delivery of the furniture at that address but did not let the delivery persons take the furniture up to the apartment. This evidence, although circumstantial, was nevertheless more than sufficient to lead a reasonable person to conclude that defendant was in possession of stolen property. The fact that the woman who accompanied defendant, rather than defendant himself, had actually used the credit card, which bore a woman's name, does not dissipate the incriminating nature of the evidence, i.e., that it was defendant who had access to the apartment where the credit card was last seen and defendant who accepted delivery of the furniture. Concur—Ellerin, J. P., Wallach, Williams and Mazzarelli, JJ.

---

* " 'Reasonable cause to believe that a person has committed an offense' exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it. Except as otherwise provided in this chapter, such apparently reliable evidence may include or consist of hearsay." ·