■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY BASS, Appellant. [715 NYS2d 466] —Lahtinen, J. Appeal from a judgment of the County Court of Schenectady County (Giardino, J.), rendered June 30, 1998, upon a verdict convicting defendant of the crimes of murder in the second degree (two counts), robbery in the first degree (two counts) and criminal use of a firearm in the first degree.

Defendant was indicted in October 1997 by a Grand Jury for three counts of murder in the second degree, three counts of robbery in the first degree and two counts of criminal use of a firearm in the first degree stemming from an incident which occurred on May 23, 1997 on Lincoln Avenue in the City of Schenectady, Schenectady County, resulting in the death of Brian Gardiner. Upon defendant's motion at the close of the

People's case, County Court dismissed count 6 of the indictment charging robbery in the first degree under Penal Law § 160.15 (4) and count 8 charging criminal use of a firearm in the first degree under Penal Law § 265.09 (1) (b), finding that the prosecution "had not made out a prima facie case that defendant had 'displayed' a weapon," an element of each of those crimes. Defendant was found guilty of the remaining counts of the indictment except for count 2 charging him with murder in the second degree (reckless and depraved indifference murder) which was removed from the jury's consideration by County Court's jury instructions when the jury found him guilty of count 1 of the indictment charging him with murder in the second degree (intentional murder). He was sentenced to indeterminate prison sentences consisting of concurrent terms of 25 years to life on each count of murder, a concurrent sentence of 12½ to 25 years on one robbery count, a consecutive sentence of 17½ to 25 years on the second robbery count and a sentence of 12½ to 25 years on the count of criminal use of a firearm to be served concurrently with the sentence on the second robbery count. He now appeals.

The prosecution's case established that on the evening of May 23, 1997 Gardiner and his friend Wilbur Randall, who were both deaf, left a party at Gardiner's house to purchase beer and ended up in the Hamilton Hill area in Schenectady for what Randall thought was a visit with friends of Gardiner. While proceeding on Lincoln Avenue at about 10:40 P.M., their vehicle was waved down by the then-16-year-old defendant from whom Gardiner had previously purchased drugs. Gardiner stopped the truck in the middle of the street, put the vehicle in park and proceeded to have a discussion with defendant, who was standing at the driver's side of the truck talking to Gardiner through the open window. During this time defendant's friend Marcel Johnson, also known as Pum, was standing next to the truck on the driver's side, three or four feet behind defendant. The discussion escalated into what was described by witnesses as a "struggle" between the two men with their hands clasped, each pulling on the other's hands. As Gardiner put the truck in gear one witness heard a shot and saw a flash and another heard a pop and saw smoke which they described as coming from the area of the driver's side window of Gardiner's truck. Randall, who was sitting in the passenger's seat of the cab of Gardiner's truck, testified he "felt" a vibration which he described as the sensation of a gunshot, having felt the vibration of a gunshot when hunting, and that Gardiner then slumped over onto his left shoulder. Randall stopped the moving truck and exited yelling for help.

The police investigation revealed that Gardiner had been fatally shot with a .38-caliber handgun, the bullet entry wound being three inches behind and slightly above his left ear. Upon searching the cab of the truck, the police found a crumpled and torn $20 bill but no fingerprints or other evidence connecting defendant to the money.

Defendant was identified as the person standing next to the driver's door window by Randall and eyewitnesses Clarence Terry and Keith Moore, who were in another vehicle parked on Lincoln Avenue in close proximity to where Gardiner's truck stopped. A witness for the defense, Candace Robinson, who had been waiting for Terry at his apartment, testified that he returned shortly after the shooting and told her that "Pum just ****ing shot somebody" and proceeded to describe to her the incident involving two deaf people in a truck. Pum testified that he saw defendant about an arm's length from the driver's side window of the truck but did not see what defendant was doing nor did he observe defendant's hands. He indicated that he heard a boom-like a gunshot but could not tell where it came from, nor did he see a flash or any smoke. Defendant testified that Pum was the shooter.

Defendant argues on appeal that County Court erred in admitting a .38-caliber handgun into evidence, erred by permitting the prosecution to call a second pathologist to testify, that the evidence against him was insufficient to convict, that the court failed to properly sanction the People for a *Rosario* violation and their failure to preserve crucial evidence, that the robbery counts should have been dismissed, that the jury should not have been charged on felony murder (count 3 of the indictment) and that the sentences imposed were improper, harsh and excessive. The People argue that there is no merit to any of defendant's claims.

First, defendant argues that the gun received in evidence was never linked to him or the crime and that since guns constitute strong evidence and given the possibility someone else did the shooting, the gun's receipt in evidence amounted to prejudicial error warranting reversal of his conviction. Initially, we note the prosecution correctly points out that this issue was not preserved for review as no objection was made to the admission of the gun.[1] However, we shall exercise our discretion and consider this argument in the interest of justice (*see*, CPL 470.15 [3] [c]; [6] [a]).

---

1. Upon the prosecution's offer of a number of items in evidence, including the gun, defendant's counsel stated, "I have no objection to the items going into evidence, your Honor."

Turning to the merits of this argument and acknowledging that an admission in evidence of weapons having no probative value or serving no valid purpose may be unduly prejudicial and grounds for reversal (*see, People v Ciembroniewicz,* 169 AD2d 929; *People v Tucker,* 102 AD2d 535), we do not find reversal to be warranted on this record. The gun admitted into evidence was discovered several blocks from the scene of the shooting some two weeks later. Ballistic tests demonstrated that the bullets fired from the gun had markings similar to the bullet which killed Gardiner, however, the prosecution's experts could not positively identify it as the gun from which the fatal bullet was fired. The gun had been broken down and cleaned by the person who found it before it was turned over to the Schenectady Police Department.

Rather than challenge the admissibility of the gun, it appears from the record that defendant's experienced defense counsel made a tactical decision to employ the gun's lack of connection to either the shooting or defendant as a prong of his attack on the prosecution's lack of evidence establishing defendant's guilt beyond a reasonable doubt. While certainly open to question, we will not second-guess the strategy of experienced trial counsel who zealously represented defendant throughout the trial. Accordingly, we do not view County Court's admission of the gun into evidence as either constitutional or nonconstitutional error. However, even if we were to conclude that a nonconstitutional error was committed, we would be compelled to find such error was harmless since, even if the gun had not been admitted in evidence, there was no significant probability, on this record, that the jury would have acquitted defendant on count 1 of the indictment charging him with murder in the second degree (*see, People v Ayala,* 75 NY2d 422, 431, *cert denied* 513 US 888; *People v Crimmins,* 36 NY2d 230; *People v Davis,* 167 AD2d 553).

Defendant next argues that it was error to permit the prosecution to call a second pathologist, Barbara Wolf, who had not examined the victim or the tissue excised from the victim's body in the area of the entrance wound and who testified from photographs and the autopsy report, claiming it amounted to improper impeachment of the Medical Examiner, Thomas Oram, a prior prosecution witness. The People claim that Wolf's testimony was offered not to contradict but to clarify Oram's testimony.

Oram testified that the shot which killed Gardiner was fired

about 18 inches from Gardiner's head,[2] which was inconsistent with the eyewitness testimony placing defendant immediately adjacent to the driver's side window and more consistent with defendant's claim that Pum, some three or four feet behind him, shot Gardiner through the missing rear window of the truck. Wolf described the entry wound as a "loose contact wound" where the gun would be in loose contact with the head, much closer than 18 inches and more consistent with the People's theory of defendant's guilt.

We find County Court's ruling that allowed Wolf to testify proper. A party may prove a material fact in a case by different witnesses though the incidental effect may be contradiction of each other's testimony (see, People v Reed, 40 NY2d 204, 207) and there is nothing prohibiting a party from presenting divergent expert opinions on a particular subject (see, People v Jackson, 65 NY2d 265, 272; People v Figueroa, 153 AD2d 576, 583), the conflicting testimony simply creating a credibility question for the jury (see, People v Jackson, supra, at 272; People v Figueroa, supra, at 579), which is free to. accept or reject all or parts of a witness's testimony (see, People v Reed, supra, at 208). While Wolf's opinion was not in harmony with that of Oram on the issue of how far the gun was from Gardiner's head when it was fired, a crucial issue given the respective positions of defendant and Pum relative to where Gardiner was sitting in the truck, the jury's resolution of this issue is supported by the evidence in the record. We find that Wolf's testimony does not amount to prohibited impeachment (see, People v Reed, supra, at 206-208; see also, Becker v Koch, 104 NY 394, 401).

Additionally, defendant's claim that Wolf's testimony lacked a proper foundation as it was based solely on her review of the photos and autopsy report, an issue properly preserved for our review by the timely objection of defense counsel, must also be rejected (see, People v Miller, 91 NY2d 372, 379).

Defendant next argues that County Court erred in not sanctioning the prosecution for failing to preserve crucial evidence, the blood-splattered truck and the skin excised from Gardiner's head in the area of the bullet entry wound, which could have been employed by defendant to support his interpretation of disputed factual issues. Defendant claims that he needed to view the truck in relation to the blood splatter pat-

---

2. Oram initially opined the shot came from two or three feet away but subsequently reexamined that finding with the physician who actually conducted the autopsy prior to the trial and testified at trial that "it was probably more like 18 inches."

tern from Gardiner's wound and because a police officer testified that he observed a bullet hole in the rear window glass behind the driver's seat. However, the police officer who testified regarding the rear window of the truck admitted he was in error and that the rear window behind the driver did not have any glass in it. Further, both prosecution pathologists discounted the significance of the blood splatter pattern due to the extreme mobility of the head. In light of these facts defendant has not made a showing that he was prejudiced by the release of the truck to Gardiner's parents who sold it and, therefore, no sanction was warranted (*see, People v Wilson*, 156 AD2d 1002).

With respect to defendant's argument that the People failed to preserve the excised skin from Gardiner, this bit of evidence was in the possession of the Medical Examiner who defendant acknowledges to be "independent of and not subject to the control of the office of the prosecutor" (*People v Washington*, 86 NY2d 189, 192) insulating the prosecution from *Rosario* or other claims of prosecutorial misconduct based on the actions or inactions of that office (*see, id.*). Likewise, this case is distinguishable from *People v Bryce* (88 NY2d 124) cited by defendant in support of his argument. During his testimony Oram acknowledged his office did not perform certain tests on this piece of skin (e.g., for powder burns) which defense counsel fully explored during his cross-examination. The searching cross-examination of Oram regarding his office's failure to perform certain recognized tests and the fact that a prospective defense pathologist had available the same pictures and reports used by Wolf to form her expert opinion that the wound was a "loose contact wound" combine to remove any possible prejudice to defendant and eliminated the need for any sanction of the People for nonpreservation of this evidence.

Defendant also claims that County Court erred in not imposing a substantial sanction on the prosecution for failing to make available to it a tape of a telephone call from prosecution eyewitness Clarence Terry to defense witness Candace Robinson. The call was made at the behest of the police in an attempt to demonstrate that Robinson lied when she said that Terry stated to her Pum did the shooting and told her he lied to protect Pum's mother. County Court determined that this was *Rosario* material (*People v Rosario*, 9 NY2d 286) because it contained a statement of a prosecution witness, Terry, and permitted the defense to listen to the tape and recall Terry to cross-examine him regarding its contents. Defendant argues automatic reversal was warranted, citing *People v Perez* (65 NY2d 154). We disagree.

Where the People fail to provide *Rosario* material and defendant is prejudiced as a result, the court must impose a sanction and not doing so is an abuse of discretion (*see, People v Wallace*, 76 NY2d 953, 955). Determination of an appropriate sanction for a *Rosario* violation is left to the discretion of the trial court whose focus should be the need to eliminate prejudice to the defendant (*see, People v La Mountain*, 249 AD2d 584, 585, *lv denied* 92 NY2d 855). Here, the prosecutor claimed he was unaware of the tape until the involved police officer testified at the trial, the tape was immediately provided to the defense upon the People's knowledge of its existence, County Court's sanction was imposed before Robinson testified, the contents of the tape appeared to bolster Robinson's testimony and, aside from the violation itself, no other prejudicial impact has been demonstrated by defendant. Considering all these factors we find the sanction imposed, permitting the defense to listen to the tape and recall Terry to allow cross-examination regarding the contents of the tape, an appropriate exercise of County Court's discretion (*see, People v Martinez*, 71 NY2d 937, 940; *People v Dickson*, 260 AD2d 931, 933, *lv denied* 93 NY2d 1017), and decline to reverse defendant's conviction on this ground.

We do, however, find merit in defendant's argument that his conviction of two counts of robbery in the first degree cannot stand. The term robbery is defined, in pertinent part, in Penal Law § 160.00 as follows: "Robbery is forcible stealing. A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person." Larceny is when "[a] person steals property and commits larceny when, with intent to deprive another of property * * * he wrongfully takes, obtains * * * such property from an owner thereof" (Penal Law § 155.05 [1]).

Defendant was convicted of robbery in the first degree under subdivision (1) of Penal Law § 160.15, involving the causing of serious physical injury to a person not a participant in the crime during the course of the robbery or flight therefrom, and under subdivision (2) of that statute, involving his being armed with a deadly weapon. Considering the evidence in the light most favorable to the prosecution (*see, People v Harper*, 75 NY2d 313, 316), we hold that an essential element of the crime of robbery has not been proven beyond a reasonable doubt for either count (*see, People v Contes*, 60 NY2d 620, 621), the prosecution having failed to prove that defendant or another participant in the crime (i.e., Pum) forcibly stole property from

Gardiner, nor do we find, as pertains to the robbery charges, "any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial * * * and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (*People v Bleakley*, 69 NY2d 490, 495 [citation omitted]; *see, People v Contes, supra*, at 621).

The People's only proof that defendant stole property was his uncorroborated statement to prosecution witness Cecilia Huff in a phone call he made to her from jail. Huff testified on direct examination that defendant told her "how could he do it if he had one part of the money and the other guy had the other half, how could he shoot somebody." We find nothing in that rhetorical statement from which a rational person could properly infer that defendant forcibly stole property from Gardiner. Defendant's admission to prosecution witness John McNeil that "the deaf guy owed me money and I had to merk him," employed by the prosecution to establish the intentional murder charge, made no reference to his taking or attempting to take the money that was allegedly owed to him but only that he "merked" (killed) the deaf man. The torn and crumpled $20 bill found on the floor of the truck cab after the shooting and other money found in the cab of the truck did not contain defendant's fingerprints and was not otherwise connected to defendant. None of the eyewitnesses, including Randall, who was seated with Gardiner in the truck cab, saw anything in defendant's or Gardiner's hands before, during or after their "struggle" during which their hands appeared clasped. This evidence failed to establish beyond a reasonable doubt all of the necessary elements of these crimes (*see, e.g., People v Thomas*, 274 AD2d 761). Nor does this record provide sufficient proof of any robbery committed by Pum or anyone else such that defendant may have been found to have been "another participant in the crime" under Penal Law § 160.15, requiring us to overturn the jury's verdict with respect to the robbery counts of the indictment. Having determined that the evidence was legally insufficient to prove robbery, we need not employ our unique factual review (CPL 470.15) to ascertain whether defendant's robbery conviction was against the weight of the evidence.

Our decision regarding the dismissal of the robbery charges impacts defendant's convictions for felony murder and criminal use of a firearm. In light of our finding that there was not legally sufficient proof to establish felony robbery, the underlying crime to felony murder charged in the indictment herein,

the proof necessarily fails to establish felony murder and that charge must be dismissed (see, People v Johnson, 250 AD2d 1026, 1028, lv denied 92 NY2d 899). Similarly, as the commission of a class B violent felony offense is an element of the charge of criminal use of a firearm in the first degree (Penal Law § 265.09), dismissal of all robbery charges eliminates the proof of that element and must result in dismissal of this charge.

Defendant likewise argues that the evidence was insufficient to convict him of intentional murder (Penal Law § 125.25 [1]). Our review of the record reveals a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial * * * and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Bleakley, supra, at 495 [citation omitted]; see, People v Contes, supra, at 621).

The prosecution presented eyewitness testimony placing defendant adjacent to the open driver's side window of Gardiner's pickup truck as one eyewitness observed a flash in the driver's window of the truck and heard a shot and another eyewitness heard a pop and saw smoke at the driver's side window. Other eyewitnesses identified defendant as the person next to the driver's window although they could not see defendant's hands. Wolf's expert forensic testimony established Gardiner died from a single gunshot wound which was fired from a gun that was in "loose contact" with his head. The passenger in Gardiner's truck, who was deaf, felt a vibration from the driver's side which he recognized as a gunshot. This circumstantial evidence, together with defendant's statement to McNeil that "the deaf guy owed me money and I had to merk him," combined to provide a legally sufficient basis for the jury's verdict convicting defendant of intentional murder under count 1 of the indictment.

Defendant also claims that the jury verdict is against the weight of the evidence and, with respect to the remaining intentional murder conviction, it would not have been unreasonable for the jury to have reached a different verdict requiring us to "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People ex rel. MacCracken v Miller, 291 NY 55, 62; see, People v Bleakley, supra, at 495; People v White, 261 AD2d 653, 656, lv denied 93 NY2d 1029). Our independent factual review reveals that Wolf testified that the victim suffered a "loose contact wound," other evi-

dence concerning a vibration, smoke, a flash and the sound of a shot provides proof that a shot was fired in close proximity to the driver's side window of the truck, and four eyewitnesses placed defendant in a position where only he could have administered such a mortal wound. While Wolf's testimony and Oram's testimony may have conflicted in certain areas and many of the other witnesses presented by both sides had lengthy criminal histories casting doubt on the veracity of their testimony, it was the jury's function to resolve these issues (*see, People v Page,* 225 AD2d 831, 832-833, *lv denied* 88 NY2d 883), and it was free to accept or reject all or part of any testimony (*see, People v Rose,* 215 AD2d 875, 876, *lv denied* 86 NY2d 801). According due deference to the jury's "opportunity to view the witnesses, hear the testimony and observe demeanor" (*People v Bleakley, supra,* at 495), and to determine credibility issues, we conclude that the jury's verdict convicting defendant of murder in the second degree as charged in count 1 of the indictment was not against the weight of the evidence (*see, People v Rose, supra,* at 876). Accordingly, we find no reason to disturb that determination.

Defendant next claims ineffective assistance of counsel arguing his counsel failed to secure a defense pathologist and a defense ballistics expert who could have testified on crucial issues, alluding to the disparity of resources between the offices of the prosecution and the public defender.

Our examination of a claim of ineffective assistance of counsel focuses on whether defendant received "meaningful representation" (*People v Benevento,* 91 NY2d 708, 712 [internal quotations omitted]; *see, People v Wiggins,* 89 NY2d 872, 873; *People v Baldi,* 54 NY2d 137, 151; *People v Fancher,* 267 AD2d 770, *lv denied* 94 NY2d 919; *People v Foote,* 228 AD2d 720). In his brief, defendant concedes that defense counsel did provide meaningful representation and the record confirms defense counsel's appropriate motions, timely and proper objections during the trial and, despite the lack of defense experts, his vigorous attack of the opinions of the prosecution's experts while protecting the record for our review. On this record and for all the reasons stated in this opinion, we find no reason to disturb defendant's remaining conviction based on this claim.

Finally, defendant argues his sentences were improper, harsh and excessive. Our reversal of defendant's convictions on all but the intentional murder charge, which will result in the vacatur of his sentences on those charges, renders academic his claim that he was improperly sentenced. While defendant

received the maximum sentence on his conviction on the count of murder in the second degree charging him with intentional murder, given the circumstances surrounding the crime and his criminal history, notwithstanding his age and family background, we do not find the sentence harsh or excessive nor do we find the presence of any extraordinary circumstance warranting our interference with the sentence (*see, People v Dolphy*, 257 AD2d 681, *lv denied* 93 NY2d 872).

Mercure, J. P., Peters, Spain and Rose, JJ., concur. Ordered that the judgment is modified, on the law, by reversing so much thereof as convicted defendant of murder in the second degree (count 3), robbery in the first degree (counts 4 and 5) and criminal use of a firearm in the first degree (count 7); said counts of the indictment dismissed; and, as so modified, affirmed.