# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

771

KA 09-00281

PRESENT: SCUDDER, P.J., SMITH, FAHEY, LINDLEY, AND MARTOCHE, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                        MEMORANDUM AND ORDER

LANCE J. REED, DEFENDANT-APPELLANT.

---

TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER, HARRIS BEACH PLLC
(SVETLANA K. IVY OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (NICOLE M. FANTIGROSSI OF
COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Monroe County Court (John R.
Schwartz, A.J.), rendered December 9, 2008. The judgment convicted
defendant, upon a jury verdict, of murder in the second degree and
robbery in the first degree (two counts).

It is hereby ORDERED that the judgment so appealed from is
affirmed.

Memorandum: Defendant appeals from a judgment convicting him
upon a jury verdict of murder in the second degree (Penal Law
§ 125.25 [3] [felony murder]) and two counts of robbery in the first
degree (§ 160.15 [1], [2]). Defendant contends that the evidence is
legally insufficient to establish an essential element of the robbery
counts, i.e., that he or one of his accomplices stole property, and
thus it is legally insufficient with respect to those counts. He
further contends that the felony murder conviction must also be
reversed due to the legal insufficiency of the evidence with respect
to the robbery counts. We reject those contentions.

"A person is guilty of robbery in the first degree when he
forcibly steals property and when, in the course of the commission of
the crime or of immediate flight therefrom, he or another participant
in the crime . . . [c]auses serious physical injury to any person who
is not a participant in the crime; or . . . [i]s armed with a deadly
weapon" (Penal Law § 160.15 [1], [2]). Insofar as relevant here,
felony murder is committed when defendant, "[a]cting either alone or
with one or more other persons, . . . commits or attempts to commit
robbery . . . , and, in the course of and in furtherance of such crime
or of immediate flight therefrom, he, or another participant, if there
be any, causes the death of a person other than one of the
participants" (§ 125.25 [3]). Contrary to defendant's contentions,
the evidence is legally sufficient to support the conviction of

robbery and murder.

"It is well settled that, even in circumstantial evidence cases, the standard for appellate review of legal sufficiency issues is 'whether any valid line of reasoning and permissible inferences could lead a rational person to the conclusion reached by the [factfinder] on the basis of the evidence at trial, viewed in the light most favorable to the People' " (*People v Hines*, 97 NY2d 56, 62, *rearg denied* 97 NY2d 678).  Here, we conclude that the evidence at trial could lead a rational person to the conclusion reached by the jury (*see People v Hernandez*, 79 AD3d 1683, 1683, *lv denied* 16 NY3d 895; *see generally People v Bleakley*, 69 NY2d 490, 495).  Several eyewitnesses testified that they heard the gunshots that killed the victim and observed a vehicle, which they described, drive away from the scene.  Other witnesses identified defendant as the operator of that vehicle, the vehicle was found near his sister's apartment, and defendant's sister testified that he appeared disheveled when he arrived at her apartment shortly after the time at which the shooting occurred.  An eyewitness to the shooting testified that the shooter bent over the victim immediately after the shooting, and several witnesses testified that the shooter then left in the vehicle with defendant.  In addition, the victim's girlfriend testified that, approximately 30 minutes before the shooting, she placed $40,000 in cash in a plastic grocery bag, used a distinctive double knot to close the bag, and then gave it to the victim to buy drugs.  At the police station a few days after the shooting, the victim's girlfriend identified a bag as the one that held the cash, and police officers testified that they recovered it from under the driver's armrest of the vehicle that defendant drove from the scene.  The victim's girlfriend indicated that the bag still had the same distinctive double knot at the top, although the bottom had been torn open and the bag was empty.  Photographs of the bag, which were received in evidence, depict the bag's distinctive double knot and torn bottom.

It has long been the law in New York that evidence establishing that a defendant possessed a wrapper or container that had held property before it was stolen is sufficient to support a conviction for stealing that property (*see People v Sasso*, 99 AD2d 558, 559; *People v Block*, 15 NYS 229, 230 [1st Dept 1891]; *see also People v Baskerville*, 60 NY2d 374, 379).  Consequently, "[t]his evidence, although circumstantial, was nevertheless more than sufficient to lead a reasonable person to conclude that defendant" or one of his accomplices stole the cash from the victim (*People v Radoncic*, 239 AD2d 176, 179, *lv denied* 90 NY2d 897).  The evidence also establishes that the victim was shot and killed while that cash was being taken from him, thus providing legally sufficient evidence with respect to the remaining elements of the charges of which defendant was convicted.

Viewing the evidence in light of the elements of the crimes as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), we reject defendant's further contention that the verdict is contrary to the weight of the evidence (*see generally Bleakley*, 69 NY2d at 495).  Although an acquittal would not have been unreasonable, it cannot be

said that the jury failed to give the evidence the weight it should be accorded (*see generally Danielson*, 9 NY3d at 348; *Bleakley*, 69 NY2d at 495).

All concur except FAHEY and MARTOCHE, JJ., who dissent and vote to reverse in accordance with the following Memorandum: We respectfully dissent and would reverse the judgment, dismiss the indictment and remit the matter to County Court for proceedings pursuant to CPL 470.45. In our view, the evidence is legally insufficient to support the conviction, and the verdict is against the weight of the evidence.

We first turn to the issue of legal sufficiency. "It is well settled that, even in circumstantial evidence cases, the standard for appellate review of legal sufficiency issues is whether any valid line of reasoning and permissible inferences could lead a rational person to the conclusion reached by the [factfinder] on the basis of the evidence at trial, viewed in the light most favorable to the People" (*People v Weakfall*, 87 AD3d 1353, 1353, *lv denied* 18 NY3d 862 [internal quotation marks omitted]). "[W]hen the evidence is circumstantial the jury[, as it was in this case,] should be instructed in substance that it must appear that the inference of guilt is the only one that can fairly and reasonably be drawn from the facts, and that the evidence excludes beyond a reasonable doubt every reasonable hypothesis of innocence" (*People v Sanchez*, 61 NY2d 1022, 1024; *see People v Brown*, 23 AD3d 1090, 1092-1093, *lv denied* 6 NY3d 810). Inasmuch as " 'the robbery was the underlying felony for [the] count of felony murder[, it] constituted a material element of that offense' " (*People v Dennis*, 91 AD3d 1277, 1280). "[T]he essential elements of the underlying felony must be proven beyond a reasonable doubt in order for a conviction of felony murder to be justified" (*People v Simon*, 119 AD2d 602, 603; *see generally People v Hubbert*, 212 AD2d 633, 634), which is consistent with the court's jury charge herein that "there must be a robbery before [defendant] can be found guilty [of murder]."

Here, the victim was shot three times at close range in broad daylight on a public street in Rochester. None of the seven eyewitnesses to the shooting saw the assailant or an accomplice of the assailant take anything from the victim at the time of the shooting. Eyewitnesses did, however, see a Lincoln automobile (hereafter, Lincoln) driving away from the scene of the shooting, and that vehicle was located and secured by the police the next day. The interior of the Lincoln was, as defense counsel aptly noted on summation, "in [a] state of disarray" at that time, and in that vehicle the police discovered various grocery items, including "one or two packages of sausage biscuits," an empty Snapple bottle, and a number of lottery tickets. Police also took from the Lincoln a plastic Tops supermarket bag, the handles of which were knotted and the bottom of which appeared to have been "ripped out." No fingerprints or bodily fluids were found on the bag, nor was any hair. Moreover, defense counsel noted on summation, without objection, that there are "thousands, tens of thousands of Tops bags in [Rochester]," some of which were even carried by jurors during the trial.

The victim's girlfriend did not mention the supermarket bag at the inception of the police investigation, but disclosed its existence when she met with the police at police headquarters the day after the shooting. She was shown the supermarket bag recovered from the Lincoln, and she stated that she believed that the bag was the same bag in which she had placed $40,000 in cash that was wrapped with "colorful rubber bands." According to the victim's girlfriend, the cash had been tied with the rubber bands in preparation for the victim's anticipated purchase of drugs, shortly before his death. The only uncommon characteristic of the supermarket bag is the manner in which it was knotted, and the testimony of the victim's girlfriend is unclear as to the manner in which it was tied. We respectfully disagree with the majority's conclusion that the subject bag was distinctively knotted. Moreover, we respectfully note that none of the "colorful rubber bands" used to wrap the cash that the majority believes to have been stolen from the victim were found in the Lincoln.

"Under the facts elicited at the trial, there was no rational basis upon which the jury could have found that there was a forcible taking of property" (*Simon*, 119 AD2d at 604). Inasmuch as the supermarket bag at issue is a common item, "it cannot be reasonably concluded that the [supermarket bag found in the Lincoln] was the same [bag] possessed by the victim [shortly before his death]" (*id.*). As noted herein, none of the seven eyewitnesses to the shooting—many of whom also saw the assailant's departure from the area of the shooting—saw the taking of property from the victim. Moreover, none of those witnesses saw anyone walk from the vicinity of the victim's body carrying anything other than a gun. Indeed, there was no evidence that anyone was seen leaving the area of the victim's body with property belonging to the victim, and we thus conclude that the evidence is legally insufficient to establish that a robbery occurred (*see id.* at 603-604; *see generally People v Bass*, 277 AD2d 488, 495, *lv denied* 96 NY2d 780). Consequently, we would reverse the judgment convicting defendant of robbery as well as felony murder, which is premised upon the commission of the robbery, given the lack of legally sufficient evidence of the underlying felony.

Even assuming, arguendo, that the evidence is legally sufficient to support the conviction, we further conclude that, viewing the evidence in light of the elements of the crimes as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), the verdict is against the weight of the evidence for the reasons set forth above (*see generally People v Bleakley*, 69 NY2d 490, 495; *cf. Bass*, 277 AD2d at 496-497).

Entered: July 6, 2012                                    Frances E. Cafarell
                                                         Clerk of the Court