# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

642
KA 14-02078
PRESENT: SCUDDER, P.J., SMITH, CARNI, LINDLEY, AND DEJOSEPH, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, APPELLANT,

V                                    MEMORANDUM AND ORDER

CODY BACKUS, DEFENDANT-RESPONDENT.

---

WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (JAMES P. MAXWELL OF COUNSEL), FOR APPELLANT.

FELASCO & CUOMO, FULTON (LUCILLE M. RIGNANESE OF COUNSEL), FOR DEFENDANT-RESPONDENT.

---------------------------------------------------------------------------------

Appeal from an order of the Supreme Court, Onondaga County (John J. Brunetti, A.J.), dated March 19, 2014. The order granted the motion of defendant to vacate a judgment of conviction pursuant to CPL 440.10.

It is hereby ORDERED that the order so appealed from is unanimously reversed on the law, the motion is denied, and the judgment of conviction is reinstated.

Memorandum: The People appeal from an order granting defendant's motion pursuant to CPL 440.10 to vacate the judgment convicting him upon a jury verdict, in 2008, of murder in the second degree (Penal Law § 125.25 [3]), burglary in the first degree (§ 140.30 [2]), and two counts of attempted robbery in the first degree (§§ 110.00, 160.15 [1], [2]), based on, inter alia, newly discovered evidence (*see* CPL 440.10 [1] [g]). We previously affirmed the judgment of conviction (*People v Backus*, 67 AD3d 1428, *lv denied* 13 NY3d 936). The evidence at trial included the testimony of a codefendant, who testified that he, defendant, and a third person planned to rob the victim, a Syracuse drug dealer. The codefendant testified that defendant entered the victim's apartment but left the entrance door unlocked and made a cell phone call to the codefendant, after which the codefendant and the third person entered the apartment and demanded drugs and money. The codefendant further testified that the victim and the third person struggled over a handgun, which discharged, causing the victim's death. The prosecution at trial introduced a statement that defendant made to the police, in which he admitted that he was present at the victim's apartment when two armed men burst into the apartment. Defendant's statement also indicated that he fled the scene prior to any shooting and did not see what happened thereafter. In addition, the prosecution presented the testimony of a woman who was present in the apartment when the perpetrators entered, who identified defendant

as also being present, and the prosecution presented cell phone records establishing that defendant made several calls to a cell phone allegedly possessed by the codefendant. Prior to trial, the codefendant identified a woman as the driver of the getaway car. Although that information was not introduced at trial, defendant's attorney was notified that the codefendant had identified the woman as the driver, and that the woman declined to talk with the police. The codefendant pleaded guilty to a reduced charge with a promise of a shorter prison sentence, conditioned on his agreement to testify against defendant and the third person, who was acquitted after a separate trial.

In June 2012, Kenneth Jackson, a member of a street gang in Syracuse, pleaded guilty to unrelated charges in federal court and was required, in accordance with the plea agreement, to provide information concerning his other illegal activities, albeit with the agreement that he would not be charged with any crimes arising from those activities. Jackson eventually gave a statement to Syracuse police investigators, in which he averred that he and another gang member robbed the victim, not the codefendant and the acquitted third person. Jackson also averred, however, that defendant went with them, that defendant had left the door unlocked so that Jackson and the other gang member could enter, and that defendant called the gang members by cell phone and informed them that the door was unlocked. Jackson averred that defendant looked surprised when the second gang member produced a handgun inside the victim's apartment, and defendant left the apartment before the victim was shot. Jackson further averred that the second gang member's girlfriend drove defendant, Jackson, and the other gang member back to an apartment after the crime, where they all ingested the drugs taken during the robbery and planned their alibis for the evening.

The investigators informed defendant that Jackson admitted participating in the crime, and defendant moved to vacate the judgment on the grounds that, inter alia, the information Jackson provided was newly discovered evidence. Supreme Court held a hearing on the motion, at which Jackson's statement was introduced. In addition, the woman who the codefendant identified at trial as the getaway driver testified and denied driving anyone to or from the crime, but she also testified that she was never contacted by the police. The second woman, who was identified as the driver in Jackson's statement, testified at the hearing that she drove defendant, Jackson and the other gang member to and from the crime. She further testified that she heard a gunshot after seeing defendant leave the victim's apartment, but before the two gang members left the apartment. Before she testified, the court assured her that she could not be prosecuted for any crime based on her testimony. Defendant testified at the hearing that he and his family had been threatened by the second gang member to ensure defendant's silence, and that the second gang member accompanied defendant's mother when she visited defendant in prison.

At the conclusion of the hearing, the court concluded that, although defendant was aware of the evidence at the time of trial, the evidence was newly discovered because he reasonably feared that the

two gang members would kill him or members of his family if he implicated them, and because Jackson and the second woman would have invoked their Fifth Amendment rights if called at trial. The court further concluded that, if such evidence had been received at trial, it would have created a reasonable probability that the verdict would have been more favorable to defendant. The court granted the motion and vacated defendant's judgment of conviction. The People appeal.

Pursuant to CPL 440.10 (1) (g), a court may vacate a judgment of conviction on the ground that "[n]ew evidence has been discovered since the entry of a judgment based upon a verdict of guilty after trial, which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant; provided that a motion based upon such ground must be made with due diligence after the discovery of such alleged new evidence." "It is well settled that on a motion to vacate a judgment of conviction based on newly discovered evidence, the movant must establish, inter alia, that there is newly discovered evidence: (1) which will probably change the result if a new trial is granted; (2) which was discovered since the trial; (3) which could not have been discovered prior to trial; (4) which is material; (5) which is not cumulative; and[] (6) which does not merely impeach or contradict the record evidence" (*People v Smith*, 108 AD3d 1075, 1076, *lv denied* 21 NY3d 1077 [internal quotation marks omitted]; *see People v Salemi*, 309 NY 208, 215-216, *cert denied* 350 US 950). Defendant has the burden of establishing "by a preponderance of the evidence every fact essential to support the motion" (CPL 440.30 [6]). Furthermore, "[t]he power to grant an order for a new trial on the ground of newly discovered evidence is purely statutory. Such power may be exercised only when the requirements of the statute have been satisfied, the determination of which rests within the sound discretion of the court" (*Salemi*, 309 NY at 215; *see People v White*, 125 AD3d 1372, 1373; *People v Pugh*, 236 AD2d 810, 811, *lv denied* 89 NY2d 1099).

Here, we agree with the People that the court abused its discretion in determining that defendant met his burden on the motion. First, the court erred in admitting Jackson's statement in evidence at the hearing, and, in any event, the statement would not be admissible at trial. This is vital because " '[i]mplicit in th[e] ground for vacating a judgment of conviction is that the newly discovered evidence be admissible' " (*People v Tankleff*, 49 AD3d 160, 182; *see People v Mazyck*, 118 AD3d 728, 730, *lv denied* 24 NY3d 1086). Here, the court admitted the statement at the hearing as a declaration against penal interest, but it is well settled that "[f]or a statement against penal interest to be admissible the interest compromised must be such as to 'all but rule out' motive to falsify, [and] the declarant must be conscious of the consequences of his statement at the time it is made . . . Those assurances of probative value, which might in a proper case substitute for cross-examination, were not present in this case" (*People v Geoghegan*, 51 NY2d 45, 49). Although a less stringent standard applies where, as here, the declaration is offered by defendant to exonerate himself rather than by the People,

to inculpate him (*see People v Stevens*, 212 AD2d 746, 747, *lv denied* 85 NY2d 943), none of the requirements was met here.  To the contrary, the statement of the gang member was provided only after he was assured that he would not be prosecuted for any information that he provided, thus removing any indicia of reliability regarding that information (*see People v Morgan*, 76 NY2d 493, 495).

Next, we conclude that the court erred in determining that the evidence upon which defendant relied was newly discovered.  Even assuming, arguendo, that Jackson's statement was properly admitted at the hearing, and further assuming, arguendo, that the information he provided is material, noncumulative, and does not merely impeach or contradict the record evidence, we conclude that the information was known to defendant at the time of the trial (*see People v Taylor*, 246 AD2d 410, 411-412, *lv denied* 91 NY2d 978).  We cannot agree with the court that it was in effect "newly discovered" based on defendant's fear of physical harm to himself and his family.  "A defendant who chooses to withhold evidence should not be given a new trial 'on the basis of the evidence thus withheld' " (*People v Moore*, 147 AD2d 924, 924, *lv denied* 73 NY2d 1019; *see People v Cain*, 96 AD3d 1072, 1073-1074, *lv denied* 19 NY3d 1101).  Therefore, the evidence does not satisfy the requirement that it was "discovered since the entry of a judgment based upon a verdict of guilty after trial" (CPL 440.10 [1] [g]; *see Cain*, 96 AD3d at 1073-1074; *see also People v Singleton*, 1 AD3d 1020, 1021, *lv denied* 1 NY3d 580).

In addition, again assuming, arguendo, that all of the evidence is admissible, we conclude that there is no probability that if such evidence had been received at the trial the verdict would have been more favorable to the defendant (*see* CPL 440.10 [1] [g]; *see generally People v Mooney* [appeal No. 2], 162 AD2d 951, 952-953, *lv denied* 76 NY2d 942).  The purportedly new evidence upon which defendant relies establishes that he helped plan the robbery, provided material assistance in the commission of the crime, acted in concert with the perpetrators, and shared in the proceeds of the crime, thus providing sufficient evidence to support a verdict of guilty as an accomplice to the felony murder charge of which he was convicted (*see People v Reed*, 97 AD3d 1142, 1143, *affd* 22 NY3d 530, *rearg denied* 23 NY3d 1009; *People v Sanchez*, 167 AD2d 489, 490-491, *lv denied* 77 NY2d 881). " '[W]hether one is the actual perpetrator of the offense or an accomplice is, with respect to criminal liability for the offense, irrelevant' " (*People v Rivera*, 84 NY2d 766, 771; *see Cain*, 96 AD3d at 1074).

Entered:  June 19, 2015                         Frances E. Cafarell
                                                Clerk of the Court